# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 10-51101-SCS |
| | ) | |
| MARLENE DENISE EVANS, | ) | |
| | ) | |
| *Debtor.* | ) | Chapter 13 |
| | ) | |

## MEMORANDUM OPINION

This matter came on for hearing on December 11, 2015 ("Second Hearing"), on the Motion to Close Case Without Entry of Discharge ("Motion") filed by R. Clinton Stackhouse, Jr., Chapter 13 Trustee ("Trustee"), on October 15, 2015. ECF No. 64. Counsel for the Debtor, Marlene Denise Evans (the "Debtor"), filed an answer to the Motion on November 2, 2015, in which she denies the case must be closed without a discharge and prays that the Court grant the Debtor her discharge. This matter was originally scheduled to be heard on November 6, 2015 ("Original Hearing"), but was continued to December 11, 2015, because the Debtor did not appear at the Original Hearing.

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a). Upon consideration of the pleadings and following the conclusion of the presentation of arguments by counsel for the parties, the Court took the matter under advisement. The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I.  Factual Stipulation

The Trustee and the Debtor entered into a factual stipulation concerning the Motion that provides as follows:

> 1. On June 11, 2010, the Debtor sought bankruptcy protection under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code") and relief was ordered.

2. [On] June 12, 2010, the Trustee was appointed to act as the chapter 13 trustee in the Debtor's case (the "Case").

3. The Trustee continues as the chapter 13 trustee in the Case.

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 134 [*sic*].

5. Venue is proper pursuant to 28 U.S.C. § 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

7. As of the Petition Date, the Debtor owned the real estate and improvements located at 38 Corwin Circle, Hampton, Virginia 23666 (the "Property").

8. The Debtor has remained the owner of the Property throughout the Case.

9. The Debtor and CitiFinancial, Inc. (the "Lender") entered into a contractual relationship, whereby the Debtor was provided the funding to purchase the Property, pursuant to a note (the "Note").

10. The Note required the Debtor to remit 360 monthly payments to the Lender of $1,316.56 beginning January 2007.

11. The obligation evidenced by the Note was secured by the Property, as evidenced by the Deed of Trust dated December 8, 2006 (the "Deed of Trust").

12. The Property remains subject to the Deed of Trust.

13. The Debtor remains liable to the Lender under the Note.

14. On September 26, 2014, the Debtor filed her chapter 13 plan (the "Plan"; Docket Item No. 59).[1]

15. The Plan provides, among other things, that the Debtor will remit nine (9) monthly payments of $320.00, followed by forty-two (42) monthly payments of

---

[1] The Court notes that the Debtor filed her original Chapter 13 plan on June 16, 2010, which plan was confirmed by order entered November 29, 2010. The Debtor filed an amended plan on March 1, 2011, which was not confirmed due to the filing of an objection by the Trustee. The Debtor filed a second amended plan on March 10, 2011, which plan was confirmed by order entered May 17, 2011.

$496.00, followed by nine (9) monthly payments of $107.00, to the Trustee (the "Trustee's Payments").

16. The Plan further provides, in paragraph 5 A. of the Plan, that the Debtor will make payments to the Lender pursuant to the Note (the "Direct Payments"), without modification, except as to any arrears owed to it.

17. Paragraph 5 A. of the Plan also provided that the Trustee would remit payments to the Lender, as to any arrears owed to the Lender, through the Trustee's Payments.

18. This Court confirmed the Plan by order entered on November 14, 2014 (the "Confirmation Order"; Docket Item No. 60).

19. On or about August 26, 2015, the Trustee issued the Notice of Final Cure Payment (the "Notice"), pursuant to Fed. R. Bank. P. 3002.1(f), which was sent to the Lender.[2]

---

[2] The Notice was issued by the Trustee and the responsive Statement, as outlined in paragraph 22 of the Stipulation, was filed by the Lender pursuant to Federal Rule of Bankruptcy Procedure 3002.1, entitled "Notice Relating to Claims Secured by Security Interest in the Debtor's Principal Residence."

(a) In General.  This rule applies in a chapter 13 case to claims that are (1) secured by a security interest in the debtor's principal residence, and (2) provided for under § 1322(b)(5) of the Code in the debtor's plan.

(b) Notice of Payment Changes.  The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

(c) Notice of Fees, Expenses, and Charges.  The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence.  The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

(d) Form and Content.  A notice filed and served under subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim.  The notice is not subject to Rule 3001(f).

(e) Determination of Fees, Expenses, or Charges.  On motion of the debtor or trustee

filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expenses, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

(f) Notice of Final Cure Payment.  Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim.  The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g).  If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.

(g) Response to Notice of Final Cure Payment.  Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with § 1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement.  The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f).

(h) Determination of Final Cure and Payment.  On motion of the debtor or trustee filed within 21 days after service of the statement under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

(i) Failure to Notify.  If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:

    (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

    (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

20. As more fully identified in the Notice, the Trustee paid the arrearage claim owed, as of the Petition Date, to the Lender, for $400.00.

21. The Debtor paid the Trustee's Payments.

22. On September 16, 2015, the Lender filed its Statement in Response to Notice of Final Cure Payment (the "Statement"). According to the Statement, the Lender confirmed its agreement that its claim in the Case had been paid in full.

23. The Statement further noted, however, that the Debtor was past due on the Direct Payments, with a balance of $6,344.08, as of September 16, 2015.

24. On September 29, 2015, the Trustee sent a letter to counsel for the Debtor (the "Letter").

25. In the Letter, the Trustee inquired as to whether the Debtor agreed with the information contained in the Statement, namely whether the Debtor was behind on the Direct Payments.

26. To date, Counsel for the Debtor has not responded in writing to the Letter but has orally confirmed that the Debtor is behind on the Direct Payments.

Joint Stipulation of Facts, filed November 4, 2015, Case No. 10-51101-SCS, ECF No. 69

(hereinafter, "Stipulation").

## II.  Findings of Fact

In addition to the stipulated facts, which the Court hereby adopts as findings of fact, the

Court makes the following factual findings based upon the uncontroverted record of the case.

Counsel for the Debtor filed a Motion to Approve Loan Modification After Confirmation on May

2, 2014.  ECF No. 49.  When the Trustee consented to the loan modification agreement, the Court

entered an Order Granting the Motion to Approve Loan Modification After Confirmation on August

5, 2015.  ECF No. 55.  The modified loan reduced the Debtor's monthly mortgage payments from

---

Fed. R. Bankr. P. 3002.1 (2015).

$1,000.00 to $665.16; reduced her interest rate from 8.832% to 5.00%; and provided for a loan term of 420 months. The modified loan brought her account into a current status by reamortizing her arrears, resulting in a new principal balance of $163,996.34.  The Plan filed September 26, 2014, and the Amended Schedule J filed in support of the Plan, provided, as set forth in paragraphs 16 and 17 of the Stipulation, that the Debtor would make Direct Payments on the Note to the Lender in the amount of $665.00, and that the Trustee would pay the estimated arrearage of $400.00 to the Lender.[3]  As set forth in paragraph 18 of the Stipulation, the Court entered the Confirmation Order on November 14, 2014.  ECF No. 60.

At the Original Hearing, counsel for the Debtor requested the Court take notice that she filed the Debtor's Certification of Compliance with 11 U.S.C. § 1328 on August 20, 2015.  Transcript of November 6, 2015 Hearing, at 12-13 (hereinafter, "Tr.").  Counsel for the Debtor confirmed that the Debtor owed postpetition arrears to the Lender totaling $6,344.08.  *Id.* at 2-3.  Counsel for the Debtor also represented that the Debtor was behind on her postpetition payments to the homeowners' association wherein the Property is located, in addition to being in arrears on her Direct Payments to the Lender.  *Id.* at 4.

The Debtor appeared at the Second Hearing, where she admitted, in accordance with her counsel's earlier representations, that she remained in arrears on her Direct Payments on her mortgage.  The Debtor was unaware of the exact amount of the arrears but estimated she owed at least ten (10) monthly payments.  She was unsure as to when she last made a Direct Payment.  Upon

---

[3] Paragraph 5.A. of the Plan, which provides for these payments, is entitled, "Mortgage Loans Secured by Real Property Constituting the Debtor(s)' Primary Residence; Other Long Term Payment Obligations, whether secured or unsecured, to be continued upon existing contract terms; Curing of any existing default under 11 U.S.C. § 1322(b)(5)."

inquiry by the Court, the Debtor represented she fell behind on her Direct Payments and homeowners' association obligations because she suffered reductions in her income and was also supporting displaced relatives who came to live with her.  The Debtor confirmed on the record that she owed postpetition fees to her homeowners' association totaling between $14,000.00 and $15,000.00.  Counsel for the Debtor explained that these amounts related to noncompliance fees assessed because the Debtor had been unable, due to her financial circumstances, to make required repairs to the Property.

### III.  Conclusions of Law

The dispute between the Trustee and the Debtor involves two discrete issues.  First, where the Debtor admits she completed her payments to the Trustee as required under the Plan but also admits that she failed to make Direct Payments to the Lender as provided for in the Plan, does the Debtor's failure to make those Direct Payments preclude her from receiving her discharge pursuant to § 1328 of the Bankruptcy Code?  Secondly, if the Debtor is not entitled to receipt of a discharge, what remedy should follow from the failure to obtain a discharge?  In support of his position on the first issue, the Trustee's argument is succinct: the reference in § 1328(a) to "completion by the debtor of *all payments under the plan*" (emphasis added) plainly states that a debtor is entitled to a discharge when all payments under the Chapter 13 plan are complete, which includes all payments contemplated to be made by the debtor under the plan, whether to the Chapter 13 trustee or directly to a creditor.  Motion ¶¶ 32, 35.

The Debtor asserts she has met all of the requirements under Chapter 13 of the Bankruptcy Code to receive her discharge.  First, the Debtor disagrees with the Trustee's interpretation of § 1328(a), arguing that both the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure use

the phrase "under the plan" in numerous sections and rules, and reliance must be placed on the use and context of that phrase elsewhere to determine the phrase's meaning under § 1328(a).  Debtor's Answer at 4, filed November 2, 2015, Case No. 10-51101-SCS, ECF No. 68 (hereinafter, "Answer").  The Debtor specifically cites the use of the phrase in Federal Rule of Bankruptcy Procedure 3002.1(f), positing that by serving the Notice of Final Cure Payment pursuant to that rule, the Chapter 13 trustee is making a representation that a debtor has made all required payments under the plan.  The Debtor also contends that her payments to the Lender "cannot be considered payments under the plan when considering the plain language of [§] 1322(b)(5)"[4] because such debt is precluded from discharge under § 1328(a)(1).  *Id*. at 3-4.

Additionally, the Debtor asserts that because the form language of the Chapter 13 plan in this district does not affect the payment terms of the loan but, instead, the plan relies upon and incorporates the terms of the original agreement between the debtor and the secured creditor, such payments to a secured creditor cannot be considered payments "under the plan."  *Id*. at 6; *see also*

---

[4]  Section 1322(b)(5) of the Bankruptcy Code provides:

(b) Subject to subsections (a) and (c) of this section, the plan may–

. . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5) (2015).

*id.* at 7-9.[5]  Finally, the Debtor contends that her payments to the Lender should not be considered

"payments under the plan" since the debt owed to the Lender will not be paid in full until after the

final payment is due to the Trustee. *Id.* at 4; *see also id.* at 9.  Similarly, relying on § 1322(d), which

prohibits a plan term longer than five (5) years, the Debtor also reasons that postpetition mortgage

payments cannot be considered "payments under the plan" because, if the contractual term of the

mortgage payments exceeds the 5-year limitation, the plan would violate § 1322(d).  *See id.* at 6-7.

### A.  The Statute

#### 1.  The Plain Language of 11 U.S.C. § 1328(a)

The Court's analysis necessarily begins with interpreting the plain language of the statute

at issue.  *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004) (citing

*Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).  This Court recently discussed the process of statutory

interpretation:

> In its examination of statutory language, a court construes the language in a manner
> that gives effect to all provisions "so that no part will be inoperative or superfluous,
> void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting
> *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) (internal quotation marks omitted).  A
> court's inquiry often ends begins and ends with plain language because when "the
> statute's language is plain, the sole function of the courts—at least where the
> disposition required by the text is not absurd—is to enforce it according to its terms."

---

[5]  Counsel for the Debtor asserts, as an additional argument, that if the Court determines
the Debtor is not entitled to a discharge, "the ramifications on the Bankruptcy Court, Chapter 13
trustee and Bankruptcy bar would be numerous," and would include the necessity for the Court
to review and reopen cases exhibiting fact patterns similar to the instant circumstances.  Answer
at 10-11.  The Debtor's argument presumes the certain retroactive application of such ruling.  As
noted by the United States Supreme Court, "[w]here a decision of this Court could produce
substantial inequitable results if applied retroactively, there is ample basis in our cases for
avoiding the 'injustice or hardship' by a holding of nonretroactivity."  *Cipriano v. City of
Houma*, 395 U.S. 701, 706 (1969) (quoting *Great N. Ry. Co. v. Sunburst Oil Ref. Co.*, 287 U.S.
358, 364 (1932)).  The Court declines to further consider this argument, as the argument is not
germane to the facts of the instant case.

> *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)) (internal quotation marks omitted).

*S. Bank & Tr. Co. v. Alexander* (*In re Alexander*), AP No. 13-07146-SCS, 2014 WL 3511499, at *9 (Bankr. E.D. Va. July 16, 2014), *aff'd*, 524 B.R. 82 (E.D. Va. 2014). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (alteration in original) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

Section 1328(a) provides, in pertinent part, "Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge." 11 U.S.C. § 1328(a) (2015). Section 1328 excepts certain debts from the ambit of the discharge, including those "provided for under section 1322(b)(5)." *Id*. § 1328(a)(1). The specific phrase at the heart of the controversy here is "after completion by the debtor of all payments under the plan."

"After completion by the debtor of all payments under the plan" contemplates completion of all amounts set forth to be paid under the relevant Chapter 13 plan. Had Congress intended to offer a discharge to a debtor for simply completing the payments made directly to the Chapter 13 trustee, the drafters surely could and would have crafted language narrowing the range of required payments. The omission points toward the plain notion that Congress intended the requirement that all payments contemplated by a Chapter 13 plan must be completed in order to obtain a discharge. Congress plainly made completion of *all* payments the requirement for discharge, not simply a specific subset of payments contemplated by the confirmed plan.

10

The Debtor argues that the Court should look at the context in which the phrase "under the plan" is used in numerous other locations in both the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure to determine the meaning of the phrase in § 1328(a). Answer at 4. The Court declines the Debtor's suggestion to interpret the language at issue with regard to any statutory section other than § 1328 because the plain language of the statute is clear; thus, the analysis ends there.

### 2. The Result Is Neither Absurd Nor Contrary to Congressional Intent

Finding that *all* payments contemplated to be made in the confirmed plan must be completed to obtain a Chapter 13 discharge produces neither an absurd result nor a conclusion demonstrably at odds with Congressional intent. As Judge Gargotta aptly noted:

> The Court has examined the applicable case law and concludes that Congressional intent, as formulated in the Bankruptcy Act of 1898, and subsequently analyzed in case law, holds that Chapter 13 debtors are afforded flexibility in proposing their plans, including making post-petition mortgage payments directly to their mortgage lender. In doing so, Debtors are then required to make their post-petition mortgage payments as well as their plan payments to the Trustee, all as payments pursuant to the plan.

*In re Heinzle*, 511 B.R. 69, 83 (Bankr. W.D. Tex. 2014). In reaching this conclusion, Judge Gargotta examined *In re Foster*, an opinion by the Fifth Circuit Court of Appeals finding that Congress permitted a debtor to make mortgage payments directly to the lien holder as part of its desire to provide debtors flexibility in making payments to creditors. *Foster v. Heitkamp* (*In re Foster*), 670 F.2d 478, 486 (5th Cir. 1982). The *Foster* Court rejected the notion that the designated payor of a certain debt in a Chapter 13 plan should bear upon how the payment is viewed vis-à-vis the plan. *Id*. at 490. As such, the Court concluded that payments made by a debtor directly to a creditor representing ongoing mortgage payments pursuant to § 1322(b)(5) were payments "under

the plan." *Id.*; *see also In re Kessler*, Case No. 09-60247-RLJ-13, 2015 WL 4726794, at *2 (Bankr.

N.D. Tex. June 9, 2015) (citing *In re Foster*, 670 F.2d at 485-89), *aff'd sub nom. Kessler v. Wilson*

(*In re Kessler*), Civil Action No. 6:15-CV-040-C (N.D. Tex. Nov. 19, 2015).

    Counsel for the Debtor argues that courts addressing the issue at bar have inappropriately

relied on the *Foster* decision.  No such misreliance has occurred.  In a recent decision, Judge

Cummings of the United States District Court for the Northern District of Texas affirmed *In re*

*Kessler* and discussed *Foster* in detail.  Judge Cummings concluded that, although the matter before

the bankruptcy court in *Foster* was whether to confirm a Chapter 13 plan, the holding thereof still

applies: "[J]ust because *Foster* did not deal with the issue of discharge specifically does not mean

that its holding is inapplicable to the present case.  *Foster* definitively established that current

mortgage payments made on a § 1322(b)(5) debt fall under the Chapter 13 plan when arrears for

such a debt are included in the plan." *Kessler v. Wilson* (*In re Kessler*), Civil Action No. 6:15-CV-

040-C, slip op. at 5 (N.D. Tex. Nov. 19, 2015) (citing *In re Foster*, 670 F.2d at 489).  Judge

Cummings' analysis, accordingly, clearly debunks the Debtor's theory of inapplicability.

Furthermore, even if the decision in *In re Foster* was not considered, and notwithstanding the

Debtor's criticism thereof, there is ample basis, as discussed below, for the conclusion reached here.

    Rather, it is the Debtor's proposed reading that would lead to a result both absurd and

contrary to requirements of § 1322(b)(5).  This result was recognized by the United States Supreme

Court in *Rake v. Wade*, 508 U.S. 464 (1993), in the context of interpreting and applying other

Bankruptcy Code sections.  In determining that the provisions of § 1325(a)(5)(B)(ii) could not be

ignored vis-à-vis a § 1322(b)(5) claim, the Court reasoned, "§ 1328(a) unmistakably contemplates

that a plan 'provides for' a claim when the plan cures a default and allows for the maintenance of

regular payments on that claim, as authorized by § 1322(b)(5)." *Rake v. Wade*, 508 U.S. 464, 474

(1993).  The Court concluded that "[i]f claims that are subject to § 1322(b)(5) were not 'provided

for by the plan,' there would be no reason to make an exception for them in § 1328(a)(1)." *Id*. at

475.  Judge Cummings also recognized that interpreting § 1328(a)'s requirement that a debtor make

not only payments to the Chapter 13 trustee but also other direct payments as promised to creditors

within the confirmed plan is neither absurd or inequitable; as Judge Cummings succinctly

concluded,  "[Q]uite the opposite is true."  *In re Kessler*, Civil Action No. 6:15-CV-040-C, slip op.

at 6.[6]

### 3.  The Application of 11 U.S.C. § 1328(a) Does Not Produce a Harsh Result

The Debtor implies that the denial of a discharge to a debtor who has made all of her

required payments to the Chapter 13 trustee leads to an excessively harsh outcome.  The Debtor

asserts that while denying her discharge would have no effect as to the remedies the Lender would

have against her, other creditors would enjoy remedies not otherwise available to them, especially

secured creditors, who could refuse to release liens or repossess property.  Answer at 9.  The Debtor

laments that her options going forward would be limited to conversion of her case to one under

Chapter 7, leading to the possible liquidation of assets; the filing a new Chapter 13 case; or

addressing her creditors' claims outside of the bankruptcy process.  *Id*. at 10.  The resulting harms

from these possibilities, the Debtor argues, are not "ideal" and fail to provide the Debtor with the

---

[6]   Judge Cummings reasoned that it is in fact creditors that experience an unfair and
inequitable result when debtors fail to pay creditors as promised under the terms of a confirmed
plan.  *See In re Kessler*, Civil Action No. 6:15-CV-040-C, slip op. at 6-7 (citations omitted).  In
the instant matter, the Debtor promised in her Plan, which was confirmed by this Court, to make
Direct Payments to the Lender.  The Debtor failed to fulfill this obligation; therefore, the Debtor
is not entitled to the benefits of a Chapter 13 discharge.

fresh start she contemplated when she commenced this case. *Id.* The Debtor's arguments are unavailing in light of the clear intent of Congress in conditioning the receipt of a Chapter 13 discharge on the fulfillment of *all* of the obligations set forth in the plan.[7] The conditions of receipt of a discharge by a debtor are solely and exclusively the province of Congress. Short of imposing requirements that are constitutionally offensive, the national legislature may forge the conditions of receipt of a discharge as it sees fit. Those conditions here do not provide for issuance of a discharge where the debtor has been only partially successful in abiding by the terms of her confirmed plan.

Given the plain language of 11 U.S.C. § 1328(a), the absence of a demonstrably absurd result by applying this certain construction, and the clear intentions of Congress, the statute here requires that no discharge be forthcoming to the Debtor.

---

[7] The First Circuit Court of Appeals has recognized the multiple requirements for obtaining a discharge in a Chapter 13 case in addition to making the plan payments to the trustee:

> Although the circumstances involved in these decisions differ slightly, each involved the same basic rationale; *viz.*, that the plain language of section 1328(a) (like the provision for plan modification in § 1329) entitles the debtor to a discharge only "after completion . . . of *all payments under the plan*." 11 U.S.C. § 1328(a) (emphasis added). *See, e.g.*, *In re Carr*, 159 B.R. at 542 (noting that debtor did not "complete" payments where plan required payment "in full" on all priority claims, and where the scheduled payments under the plan proved insufficient to achieve that end); *In re Delmonte*, 237 B.R. at 137 ("A Chapter 13 debtor has a two-fold obligation under a confirmed plan. It [*sic*] 'must make the plan payments required of it [*sic*] and those payments must be sufficient to do what the plan proposes.'") (emphasis added; citation omitted). Further, such generic plan provisions (*e.g.*, proposals to pay all priority claims in full) are necessary, since the proofs of claims often are not filed until after the plan is confirmed. *See In re Carr*, 159 B.R. at 540-41.

*Roberts v. Boyajian* (*In re Roberts*), 279 F.3d 91, 93 n.1 (1st Cir. 2002) (alterations in original).

14

B.  The Case Law

1.  The Totality of the Decided Cases Supports the Trustee's Position

A review of the decisions that have addressed whether § 1328(a) requires a debtor to complete all payments under a Chapter 13 plan finds universal support for the Trustee's position.[8] Thus, when a debtor is delinquent in making direct payments to a creditor pursuant to the terms of a confirmed plan, she is not entitled to receive a Chapter 13 discharge because she has not completed all of her required payments under the plan.  In *In re Gonzales*, 532 B.R. 828 (Bankr. D. Colo. 2015), the precise issue presented here was considered.  Judge Tallman extensively reviewed the decisions that have considered the question of whether payments made to a mortgage holder are "payments under the plan:"

> The Court has had prior occasion to examine the question of whether payments made directly to a creditor pursuant to the terms of a confirmed plan are 'payments under the plan' in the case of *In re: Daggs*, Case No. 10-16518-HRT. There, the Court found that the debtor was not entitled to discharge under § 1328(a) due to her failure to make all payments under her plan. The Court further found that failure to be a material default under § 1307 and converted the case to a case under chapter 7. *See* Case No. 10-16518-HRT, docket # 49.

> Subsequent to the Court's decision in *Daggs*, a Texas bankruptcy court decided the case of *In re Heinzle*, 511 B.R. 69 (Bankr. W.D. Tex. 2014). There, the trustee had filed a motion to deny discharge and dismiss the debtors' case. The Court held that, where a chapter 13 plan makes provision for direct payments to creditors, those are 'payments under the plan.' *Id.* at 78. Further, in that case, the court found the debtors to be in material default under their plan and ordered that the case be dismissed subject to an opportunity to convert their case to chapter 7 prior to the dismissal becoming effective. *Id.* at 83.

> All courts that have examined the question of whether payments required to be made directly to creditors under a confirmed chapter 13 plan are 'payments under the plan,' as that term is used in § 1328(a), have answered the question in the affirmative. *See, e.g.*, *In re Perez*, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006)

---

[8] Counsel for the Debtor conceded at the Second Hearing that no contrary case law exists.  Counsel for the Trustee confirmed that her research found no conflicting case law.

*aff'd sub nom. Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007) ("The term 'under the plan' properly refers to any payment made pursuant to the provisions of a Chapter 13 plan, regardless of whether such payment is made through the trustee or by a debtor directly to a creditor."); *In re Russell*, 458 B.R. 731, 739 (Bankr. E.D. Va. 2010) ("[B]ecause payments are not being made through the trustee does not mean they are not being made 'under' the plan."). The Court has located no authority taking a contrary position.

*In re Gonzales*, 532 B.R. at 831-32.

The Trustee's position that direct payments to a mortgage holder constitute "payments under the plan" also finds ample support in Supreme Court jurisprudence. In the aforediscussed *Rake v. Wade*, the Supreme Court construed the term "provided for by the plan" under § 1328(a) regarding a Chapter 13 discharge:

> As used in § 1328(a), that phrase is commonly understood to mean that a plan "makes a provision" for, "deals with," or even "refers to" a claim. In addition, § 1328(a) unmistakably contemplates that a plan "provides for" a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5).

*Rake v. Wade*, 508 U.S. 464, 474 (1993) (alterations in original) (citing 5 Collier ¶ 1328.01, at 1328-29). While the question addressed in *Rake* was presented within a different context than the question here, Judge Tallman astutely pointed out that it is impossible to reconcile a narrow construction of "payments under the plan" to include only payments made to a Chapter 13 trustee with the Supreme Court's broad construction as discussed in *Rake*, which encompasses claims referenced within the plan. *In re Gonzales*, 532 B.R. at 832.[9]

---

[9] Judge Leonard has reached the identical conclusion:

Analyzing the phrase "provided for by the plan" in § 1328(a), the Supreme Court clarified that "[t]he most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in the plan." *Rake v. Wade*, 508 U.S. 464, 473-74, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (emphasizing that the phrase "provided for by the plan" in § 1328(a) "is commonly understood to mean that a plan 'makes a provision' for, 'deals with,' for even 'refers to' a claim."

16

Other recent decisions have concluded identically. *Accord*, *Kessler v. Wilson* (*In re Kessler*), Civil Action No. 6:15-CV-040-C, slip op. at 6 (N.D. Tex. Nov. 19, 2015) ("Kessler's failure to pay the current mortgage payments for the duration of the bankruptcy proceeding was a failure to complete all payments under the plan as required. Therefore, Kessler is not entitled to a discharge."); *In re Ramos*, 540 B.R. 580, 589 (Bankr. N.D. Tex. 2015) ("Here . . . the Debtors have failed to make almost three years' worth of required, direct, postpetition mortgage payments to Ocwen where Ocwen's debt was provided for and treated in the confirmed plan. Thus, under the reasoning articulated in *In re Kessler* and *In re Heinzle*, with which this court entirely concurs, the Debtors are not entitled to a discharge."); *In re Formaneck*, 534 B.R. 29, 34 (Bankr. D. Colo. 2015) ("Under § 1328(a), a Chapter 13 discharge in favor of the Debtors is conditioned on 'completion by the debtor[s] of all payments under the plan . . . .' This Court adopts the uncontroverted reasoning and conclusions of other courts determining payments required to be made directly to creditors

---

(citations omitted))."

*In re Rogers*, 494 B.R. 664, 667 (Bankr. E.D.N.C. 2013) (alterations in original). *See also In re Russell*, 458 B.R. 731, 739 (Bankr. E.D. Va. 2010) ("If the plan defines the payment terms—and in this case it clearly does—then the payments are being made 'under' the plan regardless of whether the debtor pays the creditor directly or pays through the trustee."). As Judge Mitchell also recognized in support of this conclusion:

> *See* § 1326(c), Bankruptcy Code (recognizing that "payments to creditors under the plan" may be made other than by trustee if so provided in the plan or confirmation order); 2 William L. Norton, Jr., Bankr. L. & Prac. 3d § 29:2 ("Arguably, it can be said that a plan under Chapter 13 of the Code is intended to provide for all payments on all debts, whether to be paid through the trustee or directly by the debtor, and that both types of payments would be 'under the plan.'"); *In re Hankins*, 62 B.R. 831, 835 (Bankr. W.D. Va. 1986) ("[E]ven though the Debtors propose to make disbursements directly to the secured creditors, such payments are nonetheless payments 'under the Plan' in the sense that they are dealt with by the Plan[.]").

*Id.* at 739 n.11 (alterations in original).

17

under a confirmed chapter 13 plan are 'payments under the plan,' as that term is used in § 1328(a).

Applying this reasoning, the Court finds the payments the Debtors promised to make directly to

Wells Fargo are 'payments under the plan' and the Debtors' failure to make those payments

prohibits entry of their discharge in Chapter 13."); *In re Doggett*, Case No. 09-35061-HRT, 2015

WL 4099806, at *3 (Bankr. D. Colo. July 6, 2015) ("A discharge under § 1328(a) requires

completion of all 'payments under the plan' and that language plainly embraces payments that a plan

provides will be made directly by the debtor to a creditor."); *In re Arredondo*, Case No. 00-10465-

RLJ-13, 2004 Bankr. LEXIS 938, at *2 (Bankr. N.D. Tex. July 15, 2004) (concluding, in

determining whether to disallow an unsecured deficiency claim, that "[t]he debtors' receipt of a

discharge is conditioned upon the debtors' completion of all plan payments") (citing 11 U.S.C. §

1328(a)); *In re McIntosh*, Case No. 90-40594, 1996 WL 391560, at *1 (Bankr. N.D. Ind. June 14,

1996) (finding a debtor is not entitled to a discharge "until all the payments required by the plan

have been made and the creditors provided for by the plan have received what the plan says they

will").[10]

Following these precedents, this Court finds that a debtor may only receive a Chapter 13

discharge under § 1328(a) upon her completion of all "payments under the plan." Like all other

courts that have considered this issue, this Court holds the language "payments under the plan"

includes payments made directly to creditors as provided for in a Chapter 13 plan as well as

payments made through the Chapter 13 trustee. Thus, the Court considers the Direct Payments that

the Debtor was obligated to make to the Lender pursuant to Paragraph 5.A. of the Debtor's

---

[10] While *McIntosh* and *Arrendondo* were decided some time ago, the conclusions
reached in those cases are the same: a debtor must complete *all* payments she is bound to make
under the terms of the confirmed plan to be eligible to receive a discharge.

confirmed Plan to be "payments under the plan."  It is undisputed that the Debtor is behind on her

Direct Payments to the Lender and did not make all of the payments that were due to the Lender.

*See* Stipulation ¶ 26; *see also supra* p. 6.  Therefore, because a debtor is only able to receive a

Chapter 13 discharge under § 1328(a) after completing all of the payments under the plan, and the

Debtor here failed to make her Direct Payments to the Lender, the Court finds that the Debtor is not

eligible to receive her Chapter 13 discharge.

   2.  Federal Rule of Bankruptcy Procedure 3002.1(f) Does Not Estop the Trustee's Position

        The Debtor also contends that the language of Federal Rule of Bankruptcy Procedure

3002.1(f) precludes the Trustee's assertion that all "payments under the plan" have not been made.

Answer at 5.  Rule 3002.1(f) requires the Chapter 13 trustee to file with the Court and serve upon

the claim holder a Notice of Final Cure Payment "after the debtor completes all payments under the

plan," informing the claim holder and the Court that, according to the trustee's records, all payments

to cure the prepetition arrearages have been made.[11]  Thus, according to the Debtor, under this rule,

the phrase "under the plan" refers to the debtor's payments to the Chapter 13 trustee; as such, she

reasons that once the trustee has served the Notice of Final Cure Payment, the trustee is adopting

the position that a debtor has made all required payments under the plan.  *Id.*  Judge Gargotta found

this assertion of estoppel to be unavailing:

> [T]he Trustee is not taking inconsistent positions that would lead to the application
> of judicial estoppel. The Trustee has only certified in her Rule 3002.1(f) notice that
> she has made all cure payments to the mortgage lender. She cannot certify if Debtors
> have made all post-petition mortgage payments because she lacks personal
> knowledge. The Rule 3002.1(f) notice does not certify, as Debtors suggest, that the

_____

[11]  Following a Chapter 13 trustee's issuance of the Notice of Final Cure Payment,
Federal Rule of Bankruptcy Procedure 3002.1(g) requires the claim holder to file and serve a
statement indicating whether the claim holder agrees that the arrears have been paid in full and
whether the debtor has maintained postpetition payments on the debt.

Trustee has acknowledged that all plan payments have been made, including
post-petition mortgage payments. Therefore, judicial estoppel does not apply.

*In re Heinzle*, 511 B.R. at 81.  The Court agrees with Judge Gargotta's conclusion and adopts the

*Heinzle* Court's reasoning on this point as well.

### 3.  Long Term Debt Payments

The Debtor's argument that a long term debt, such as the Note payable to the Lender, is not

encompassed by the Chapter 13 discharge and thus payments set forth in the plan on such a debt

cannot be "payments under the plan," Answer at 3-4, also fails.  The fact that Congress requires a

debtor to make all payments as they come due postpetition to a creditor whose claim is not subject

to discharge under the Bankruptcy Code does not produce a result at odds with the rest of the

Bankruptcy Code.  The Debtor's argument on this point was expressly advanced and rejected in *In*

*re Kessler*, Case No. 09-60247-RLJ-13, 2015 WL 4726794 (Bankr. N.D. Tex. June 9, 2015), *aff'd*

*sub nom. Kessler v. Wilson* (*In re Kessler*), Civil Action No. 6:15-CV-040-C (N.D. Tex. Nov. 19,

2015):

> [The Kesslers] reason that since long-term debts are typically paid *outside the plan*,
> such debts "are not affected at all by the plan completion or a debtor's general
> discharge."  Debtors' Brief [Docket No. 64] at 4. This raises the question of whether
> the long-term debt is paid *outside the plan* or *under the plan*; and, in particular,
> whether *direct* payments are payments under the plan. . . .
>
> The Kesslers' reference to payments "outside the plan"—meaning, for them,
> payments on debt that is provided for in the plan but is paid *directly* to the secured
> creditor (and thus not through the trustee)—conjures up the use of such phrase in an
> earlier context that no longer applies. In *Foster*, the Fifth Circuit discussed the two
> possible interpretations to the phrase "outside the plan." *Id*. at 485-86. Under one
> interpretation, the debt is treated under the plan but the debtors act as the "disbursing
> agent" and make payments "directly to the creditors rather than through the standing
> trustee." *Id*. at 486. The alternative meaning is that "outside the plan" refers to
> payments of debts not treated by the terms of the plan. *Id.* The first construction of
> the phrase reflects the way payments were provided for here. The Fifth Circuit in
> *Foster* held that payments so made are indeed made under the plan. *Id*.  It follows,

then, that a payment truly "outside the plan" refers to a payment on a debt that is not provided for by the terms of a plan. A current, fully secured claim may, for example, be left unaffected and thus excluded from the plan. *See id.* at 488-89. Such claim would then be paid "outside the plan." When a debtor chooses to exclude a secured debt from treatment under the plan, "the lien securing [such debt] merely passes through the bankruptcy case unaffected"; as a consequence, it will not be discharged. *In re Harris*, 107 B.R. 204, 206 (Bankr. D. Neb. 1989).

.  .  .  .

. . . Though the payments were to go directly from the Kesslers to [Bank of America], the debt was still provided for by the terms of the Plan. Such direct mortgage payments, if made, were payments "under the plan."

*In re Kessler*, 2015 WL 4726794, at *2-3 (second and third alterations in original).

The *Kessler* Court concluded its discussion by highlighting the interplay between the

constraints regarding making ongoing mortgage payments found in § 1322(b)(5) and the Court's

ability to issue a discharge when the debtor defaults on those postpetition direct payments:

In the context of residential mortgage debts, a debtor has the option to make his mortgage payments under the plan or outside the plan. But a debtor loses the option to make payments that are truly outside the plan if the plan provides for the curing of a default under the mortgage. *Foster*, 670 F.2d at 489 (citing § 1322(b)(5)). In such instances, "a plan may not provide for the making of the current payment on a mortgage claim outside the plan while curing the arrearage on that claim under the plan pursuant to § 1322(b)(5) . . . . [F]or the arrearage on a mortgage claim to be cured under § 1322(b)(5), the current mortgage payments while the case is pending must be provided for in the plan." *Id.* Given the restriction of § 1322(b)(5) that a plan providing for the curing of arrears must also provide for the regular payments, it follows that when a plan provides for the curing of arrears on a mortgage and the debtor makes *direct* payments on the mortgage during the plan, such payments are *under the plan*.

.  .  .  .

The Kesslers' Plan treated [Bank of America] in accordance with § 1322(b)(5) of the Code. As such, their required payments to [Bank of America], whether through the trustee or direct, were made under their Plan. Section 1328(a) directs the Court to grant a discharge upon completion of all payments under the plan. *See* § 1328(a). The Kesslers did not complete all payments under the Plan; the Court cannot grant them discharges.

21

*In re Kessler*, 2015 WL 4726794, at *3-4.  *See also In re Heinzle*, 511 B.R. at 78 ("Debtors are

entitled to receive a discharge only when they meet all the requirements of Chapter 13, including

payments under the plan and the 'maintain and cure' provisions of § 1322(b)(5).  Debtors do not

receive a discharge if they are unable to make both plan and post-petition mortgage payments.").

This Court follows the reasoning set forth in the *Foster*, *Kessler*, and *Heinzle* cases and finds

that postpetition payments on a mortgage debt made through direct payments by the debtor to the

creditor must be treated as "payments under the plan" when the plan also provides for the curing of

prepetition arrears.  The Debtor has stipulated that the Plan provided for the Trustee to make

payments to the Lender to cure her prepetition mortgage arrears.  Stipulation ¶ 17.  The Stipulation

also acknowledges that the Debtor is behind on her Direct Payments to the Lender.  *Id*. ¶ 26.

Therefore, the factual situation of the Debtor mirrors those described in *Foster*, *Kessler*, and *Heinzle*.

Thus, this Court finds that the Debtor's Direct Payments on her mortgage under § 1322(b)(5)

constitute "payments under the plan."

### 4.  *In re Russell*

The Debtor asserts two additional, related arguments tangential to her assertion that

payments on a debt precluded from discharge under § 1328(a)(1) should not be considered

"payments under the plan."  First, she argues that because the debt will not be paid in full until after

the final payment to the Trustee is due, her Direct Payments to the Lender under § 1322(b)(5)[12]

cannot be considered "payments under the plan."  Answer at 4; *see also id.* at 9.  The Debtor relies

on § 1322(d) to advance a similar argument, citing specifically that section's prohibition of a plan

term longer than five (5) years.  11 U.S.C. §§ 1322(d)(1), 1322(d)(2); *see* Answer at 6.  The Debtor

---

[12]  For the relevant text of § 1322(b)(5) of the Bankruptcy Code, see *supra* note 4.

reasons that payments under Paragraph 5.A.[13] of the Chapter 13 plan cannot be considered "payments under the plan" because, if the contractual term of those payments exceeds the 5-year limitation found in § 1322(d), the plan would violate § 1325(a)(1), which prohibits a court from confirming a plan that does not comply with the applicable provisions of the Bankruptcy Code.  *See* Answer at 6-7.  Other than bold assertions, the Debtor fails to provide any statutory authority or context for such positions.  The only case the Debtor cites in support of her theories is a decision by Judge Mitchell of this Court in *In re Russell*, 458 B.R. 731 (Bankr. E.D. Va. 2010).  According to the Debtor, *In re Russell* stands for the proposition that "a payment [] provided for by a plan [] is 'subject to the five-year limit on such payments."  Answer at 6 (quoting *In re Russell*, 458 B.R. at 739).  The Debtor also contends that *Russell* mandates that "the plan must define the payment terms of a loan in order for said payments to be made under the plan and subject to the five-year limitation enumerated in 11 U.S.C. [§] 1322(d)(1)."  *Id.* (citing *In re Russell*, 458 B.R. at 739).[14]

The Debtor's interpretation of both the issues before the Court in and the holding of *In re Russell* are, in short, entirely flawed.  Mr. Russell owned two pieces of real property.  One property served as his principal residence while the other was held for rental purposes.  *In re Russell*, 458 B.R. at 732-33.  Regarding the principal residence, the plan provided that the Chapter 13 trustee would pay arrears while Mr. Russell would make the postpetition mortgage payments directly to the lender.  *Id.* at 733.  The plan proposed that the amount of the secured claim on the rental property,

---

[13]  Paragraph 5.A. of the confirmed Plan provided for the Debtor to make direct monthly mortgage payments of $665.00 to the Lender and for the Trustee to pay an estimated arrearage of $400.00 to the Lender on a *pro rata* basis monthly with other secured claims.

[14]  Despite the assertions made in the Answer, counsel for the Debtor argued at the Second Hearing that the factual distinctions between *In re Russell* and the instant matter make the holding of that case inapplicable here.  Debtor's counsel did not request permission to submit an amended Answer to comport with her argument at the Second Hearing.

valued at approximately $168,000.00 less than the outstanding claim, would be reduced to the property's value and paid with interest at 4.25% over a 360-month term from the time of confirmation, with the remaining balance of the claim being paid as an unsecured claim. *Id*. at 733-34.

The issues before the Court related to additional obligations and restrictions on the holder of the claim secured by the principal residence (raised by the claim holder, none of which are germane to the issues before the Court in the instant matter) and an issue raised *sua sponte* regarding whether the secured portion of the claim on the rental property could be re-amortized over a period of time that exceeded the term of the plan. *Id*. at 732, 734-35.  The Court began its discussion by reminding that "[b]ecause the [rental] property is not the debtor's principal residence, the restriction in § 1322(b)(2) on modification of loans secured by real property that is the debtor's principal residence does not apply." *Id*. at 737.  The Court found Mr. Russell's proposed 360-month period for payment of the secured portion of the claim on the rental property contravened the requirement that such modified secured claim be paid in full by the time the plan was completed. *Id*. at 737-38.  Judge Mitchell contrasted the treatment of a secured claim that is outside the ambit of § 1322(b)(2), which can be modified so long as such modified payment schedule is completed by the end of the plan term, with those that cannot be modified under § 1322(b)(5):

> [Mr. Russell] is not proceeding under § 1322(b)(5), which allows the cure of a default and the maintenance of payments while the case in pending on a claim on which the last payment is due after the final payment under the plan is due.  Section 1322(b)(5) allows a debtor to take advantage of a repayment period that exceeds the term of the plan.  To do so, however, the debtor must (except for curing defaults) pay the debt according to its original terms.  By reducing [the lender]'s secured claim from $400,241 to $232,401 and by reducing the interest rate, the debtor is no longer maintaining payments but instead is modifying the debt.  While such modifications are permitted under § 1322(b)(2), the term of the modified loan cannot extend beyond the five-year maximum set by § 1322(d)(1)(C) and (d)(2)(C), Bankruptcy

> Code, since it is only by proceeding under the cure-and-maintain provisions of
> Section 1322(b)(5) that the debtor can take advantage of a payment term extending
> beyond the term of the plan.

*Id*. at 738-39.[15]  Judge Mitchell also discussed the difference between debts that may be modified

under the plan with long-term, § 1322(b)(5) debts vis-à-vis discharge:

> Indeed, to permit a plan to pay a modified debt over a period longer than the plan
> term would create an anomaly with respect to the debtor's discharge at the
> completion of plan payments.  Long-term debts treated under the cure-and-maintain
> provisions of § 1322(b)(5) are excluded from the discharge that a debtor receives
> upon completing plan payments in a chapter 13 case. § 1328(a)(1), Bankruptcy Code.
> But a long-term debt treated other than under § 1322(b)(5) would not be excluded
> from discharge, thereby effectively converting the [lender's] note into non-recourse
> debt, so that in the event of a future default, the noteholder would be limited to its
> *in rem* remedies against the collateral, contrary to what would appear to be
> Congress's intent that payment obligations not paid during the plan but extending
> beyond the end of the plan not be discharged.

*Id.* at 739.  Finally, Judge Mitchell addressed the debtor's argument that because the payments on

the modified loan were being made directly to the lender, such payments were not payments "under

the plan" and not subject to the five-year limitation found in § 1322(d).  Judge Mitchell easily

disposed of this argument:

> The court notes, first, that the statute is not phrased in terms of payments "under the
> plan" or "through the trustee."  Rather, what the statute says is that the plan "may not
> provide for payments over a period exceeding five years."  And in any event, simply
> because payments are not being made through the trustee does not mean they are not
> being made "under" the plan.  If the plan defines the payment terms—and in this
> case it clearly does—then the payments are being made "under" the plan regardless
> of whether the debtor pays the creditor directly or pays through the trustee.  Here, the

---

[15]  The Debtor also argues that § 1322(b)(5) does not include maintenance payments as
"payments under the plan," based on the fact that "[§] 1322(b)(5) makes a distinction between
maintenance payments and payments under the plan and that [§] 1322(b)(2) clearly takes
principle residence mortgage payments out of the plan as the plan is not able to modify the terms
of said mortgage."  Answer at 5-6.  The Debtor offers no support for such statement other than
these bold assertions.  The fact that a § 1322(b)(2) claim cannot be modified has no bearing on
whether payments are being made "under the plan," and no support can be found anywhere for
such proposition.

plan plainly "provides for payments" with respect to the [lender's] mortgage and is
therefore subject to the five-year limit on such payments in § 1322(d)(1).

*Id.* In so finding, Judge Mitchell reminded that § 1326(c) permits "payments to creditors under the

plan" to be made other than by the Chapter 13 trustee if either the plan or confirmation order so

provides. *Id.* n.11 (citing 11 U.S.C. § 1326(c)).

The debt at issue here relates to the Debtor's principal residence, not a nonresidential

property where the claim could be modified. The Debtor did not attempt to modify the terms of her

mortgage on her principal residence within the Plan, nor could she pursuant to the statutory scheme.

Further, because Mr. Russell sought to modify the non-§ 1322(b)(2) claim, the plan necessarily had

to define the proposed, modified terms. None of the terms here between the Debtor and the Lender

changed, nor could they have, for the reasons stated. The claim in *Russell*, being one that the debtor

wished to and could modify, was, as Judge Mitchell found, subject to the five-year limitation set

forth in § 1322(d). The Debtor's mortgage here is not of the same type or character discussed by

Judge Mitchell. The Debtor's attempts to graft Judge Mitchell's conclusions onto the instant

situation must certainly fail. Thus, despite the Debtor's assertion that the Trustee has taken the

lessons of *In re Russell* out of context, Answer at 6, it is in fact she who has made this unfortunate

error.

### 5. The Language of the Form Chapter 13 Plan

The Debtor also advances the argument that the particular language used in this jurisdiction's

form Chapter 13 plan prevents her Direct Payments to the Lender from being considered "payments

under the plan." *See* Answer at 6-9. The Debtor argues that because the plan does not alter the

terms of the original contract but instead simply restates the amount of the contract payment at the

time of filing, the terms of this long term debt are not sufficiently defined by the plan so as to make

the payments on such debt "payments under the plan." *Id.* at 6-7, 8.  This argument is unpersuasive, as "[c]ourts agree with the interpretation here that a payment is under the plan when the debt is provided for in the plan." *In re Kessler*, 2015 WL 4726794, at *3 (citing *In re Heinzle*, 511 B.R. 69, 78 (Bankr. W.D. Tex. 2014)).  The Debtor's assertion that the plan must detail the particular terms of the direct payment is misguided.  Simply because the specific nuances regarding the payment of a long term debt are not detailed in the plan does not mean that payment should be discounted as a payment "under the plan."  Instead, existing precedent confirms that a payment is considered to be part of the plan once it is mentioned within the plan as one of the duties the debtor is bound to fulfill upon confirmation:

> Any payment made in accordance with the provisions of a chapter 13 plan is a payment under the plan; and a debt is provided for under the plan so long as a provision treats it. *See id.* at 208 [*In re Harris*, 107 B.R. 204, 208 (Bankr. D. Neb. 1989)] ("To provide for a claim under § 1328(a), a plan need only 'make a provision for it, i.e., deal with or refer to it.'" (quoting *Lawrence Tractor Co. v. Gregory* (*In re Gregory*), 705 F.2d 1118, 1122 (9th Cir. 1983))).  Debts provided for in a chapter 13 plan are typically paid through the trustee. The debtor can, however, be "designated as disbursing agent for some payments under the plan." *Foster*, 670 F.2d. at 488. Such arrangement, where the debtor pays a secured creditor directly rather than through the trustee, is a direct payment. It is not, as the Kesslers seemingly argue, a payment "outside the plan."

*Id.* at *3. *See also In re Perez*, 339 B.R. 385, 390 n.4 (Bankr. S.D. Tex. 2006) ("[W]hen the plan is confirmed, all payments that are referenced in the plan, regardless of whether they are made by the trustee or directly by the debtor, are payments made 'under the plan.'"), *aff'd sub nom. Perez v. Peake*, 377 B.R. 468 (S.D. Tex. 2007).  For these reasons, too, the Debtor's argument that a lender is not bound by the terms of the confirmed plan with regard to necessary increases in escrow items must fail.  *See* Answer at 8.

The *Kessler* decision determined that the Chapter 13 plan at issue there provided for direct

payments of the debtors' mortgage debt. Within her answer, the Debtor admits that there are

similarities between the form plan of the Kesslers' jurisdiction and this jurisdiction: "In *Kessler*, the

plan . . . is more similar to the form plan in this jurisdiction . . . ." *Id.* The Kesslers' mortgage debt

was listed in their plan as follows:

> Section I, Part G of the Plan, titled "SECURED CREDITORS (Paid Direct)," lists
> the [Bank of America] mortgage. *See* Plan at 2. The General Provisions of the Plan,
> Section II, Part G, states, "[a]ll secured claims listed in Section I, Part G shall be paid
> DIRECT by the Debtor(s) in accordance with the terms of their agreement . . . ." *Id.*
> at 5. Though the payments were to go directly from the Kesslers to [Bank of
> America], the debt was still *provided for* by the terms of the Plan. Such direct
> mortgage payments, if made, were payments "under the plan."

*In re Kessler*, 2015 WL 4726794, at *3. The Debtor's confirmed Plan states:

> 5. Mortgage Loans Secured by Real Property Constituting the Debtor(s)' Primary
> Residence . . . Curing of any existing default under 11 U.S.C. § 1322(b)(5).
>
> > A. Debtor(s) to make regular contract payments; arrears, if any, to be
> > paid by Trustee. The creditors listed below will be paid by the
> > debtor(s) pursuant to the contract without modification, except that
> > arrearages, if any, will be paid the Trustee either pro rata with other
> > secured claims or on a fixed monthly basis as indicated below . . . .

Plan at 4. There is little distinction between the language used by the Kesslers' confirmed plan and

the Debtor's confirmed Plan. The phrases "regular contract payments" and "pursuant to the contract

without modification" from this jurisdiction's form plan connote the same meaning as "with the

terms of their agreement" from the Kesslers' plan. Both phrases clearly and unequivocally obligated

the Debtor to make Direct Payments to the Lender pursuant to the terms of the existing contract

between the parties. Therefore, this Court adopts the position of the Court stated in *In re Heinzle*:

> [Section] 1322(b)(5) requires that Debtors cure and maintain payments for long term
> debt. That is, Debtors may cure a pre-petition mortgage delinquency through the
> plan, but they must do so by staying current on their mortgage. Additionally, the
> Court finds that . . . regardless how a plan is written, post-petition mortgage
> payments are payments made pursuant to the plan and the failure to maintain such

28

payments will result in dismissal, conversion, or denial of discharge.

*In re Heinzle*, 511 B.R. at 80.[16] Thus, the Court finds that the language of the form plan used in this

jurisdiction supports the conclusion that the Direct Payments be considered "payments under the

plan."[17]

---

[16] The Debtor briefly mentions that the form plan in *Henizle* states that the payments to the mortgage lender were to be made "outside the plan" and, because of this fact, counsel for the Debtor believes *Heinzle* case was decided incorrectly. Answer at 7. While counsel for the Debtor does not explicitly make an argument based on this observation, she implies that labeling the payments as ones to be made "outside the plan" supports the notion that the direct payments to a mortgage lender should not be considered to be "payments under the plan." Like the Debtor's other arguments, this argument has been addressed and dismissed by existing case law.

> The Kesslers reference to payments "outside the plan"—meaning, for them, payments on debt that is provided for in the plan but is paid *directly* to the secured creditor (and thus not through the trustee)—conjures up the use of such phrase in an earlier context that no longer applies. In *Foster*, the Fifth Circuit discussed the two possible interpretations to the phrase "outside the plan." *Id.* at 485-86. Under one interpretation, the debt is treated under the plan but the debtors act as the "disbursing agent" and make payments "directly to the creditors rather than through the standing trustee." *Id.* at 486. The alternative meaning is that "outside the plan" refers to payments of debts not treated by the terms of the plan. *Id.* The first construction of the phrase reflects the way payments were provided for here. The Fifth Circuit in Foster held that payments so made are indeed made *under the plan*. *Id.* It follows, then, that a payment truly "outside the plan" refers to a payment on a debt that is *not* provided for by the terms of a plan. A current, fully secured claim may, for example, be left unaffected and thus excluded from the plan. *See id.* at 488-89. Such claim would then be paid "outside the plan." When a debtor chooses to exclude a secured debt from treatment under the plan, "the lien securing [such debt] merely passes through the bankruptcy case unaffected"; as a consequence, it will not be discharged. *In re Harris*, 107 B.R. 204, 206 (Bankr. D. Neb. 1989).

*In re Kessler*, 2015 WL 4726794, at *2 (emphasis in original).

[17] The form plan in this jurisdiction provides a second manner in which regular contract payments may be made when prepetition arrears exist: through the Chapter 13 trustee. Paragraph 5.B. allows a debtor to designate the Chapter 13 trustee as the payor of ongoing mortgage payments pursuant to the existing contract terms: "Trustee to make contract payments and cure arrears, if any. The Trustee shall pay the creditors listed below the regular contract monthly payments that come due during the period of this Plan, and pre-petition arrearages on such debts shall be cured by the Trustee either pro rata with other secured claims or with

6. Summary

In conclusion, none of the arguments advanced by the Debtor are persuasive.  The Debtor

is attempting to use the benefits of a confirmed Chapter 13 plan to receive her bankruptcy discharge

without being held accountable for her mortgage payments.  As Judge Gargotta states in *Heinzle*:

> Chapter 13 debtors are afforded flexibility in proposing their plans, including making
> post-petition mortgage payments directly to their mortgage lender.  In doing so,
> Debtors are then required to make their post-petition mortgage payments as well as
> their plan payments to the Trustee, all as payments pursuant to the plan.

*In re Heinzle*, 511 B.R. at 83.  Thus, the Court adopts the findings of other courts that have already

addressed this issue and concludes that the Debtor should be denied entry of her Chapter 13

discharge.

> In short, the Court finds no authority—nor have the parties cited the Court
> to any—to suggest a cogent argument that payments to be made directly to a creditor,
> pursuant to the terms of a confirmed plan, are not "payments under the plan" as that
> term is used in 11 U.S.C. § 1328(a). A standard discharge under § 1328(a) requires
> completion of all "payments under the plan" and that language plainly embraces
> payments that a plan provides will be made directly by the debtor to a creditor.

*In re Gonzales*, 532 B.R. 828, at 832 (Bankr. D. Colo. 2015).

When Congress speaks plainly and decisively in its statutes, a federal court's fealty to the

democratic branch's conclusion must be certain and complete; there may be no reconsideration of

the policy as determined in the statutory language, nor may a court substitute its judgment of fairness

and wisdom.  Under § 1328(a), a debtor's receipt of a Chapter 13 discharge is conditioned upon

"completion by the debtor of all payments under the plan."  Given the plain language of § 1328(a)

---

monthly payments as set forth below."  Clearly, then, were the Chapter 13 trustee designated to
make the ongoing mortgage payments, no argument could be successfully made that such
payments were not "payments under the plan."  Thus, merely because a debtor and not the
Chapter 13 trustee is charged under a confirmed plan to make ongoing mortgage payments
should not alter the fact that such payments are "payment under the plan."

that no discharge shall be received until completion of "*all* payments under the plan," and the unwavering case law supporting the same, the outcome of the controversy here is axiomatic: the Debtor is not entitled to receipt of a discharge. The Court finds no flaws in the reasoning and conclusions of the courts that have determined that direct payments to creditors required under a confirmed Chapter 13 plan are "payments under the plan." Accordingly, the Court concludes that the Direct Payments set forth in the confirmed Plan that the Debtor was bound to make to the Lender during the Plan term constituted "payments under the plan." While the Court acknowledges that the Debtor's financial circumstances are certainly sympathetic, nonetheless, the Debtor's failure to fulfill a critical obligation under her Plan precludes her receipt of a Chapter 13 discharge. Less certain, however, is the remedy to be employed now that the Debtor's receipt of a discharge is obviated.

IV.  Remedy Where 11 U.S.C. § 1328(a) Precludes Receipt of a Discharge

In the Motion, the Trustee focuses his remedial request on the denial of the Debtor's discharge pursuant to § 1328(a), proffering the alternatives of closing the case without entry of a discharge or converting the case to a proceeding under Chapter 7 of the Bankruptcy Code. Motion ¶ 41. Few of the decisions considering the underlying predicate—whether failure to make postpetition payments directly to a lender precludes receipt of a discharge—have addressed the appropriateness of conversion or dismissal upon motion of the Chapter 13 trustee as the remedy for such a discharge denial.[18] None of these decisions have ordered case closure, without more, as a remedy.

---

[18]  The *Heinzle* court declined to issue a ruling denying the debtors' discharges; instead, the court permitted the debtors fourteen (14) days within which to convert their case to one under Chapter 7, with the failure to do so resulting in the dismissal of their case. *In re Heinzle*, 511 B.R. at 83. More common is the result in *In re Kessler*, where the court specifically ordered that the debtors' discharge would be denied. *In re Kessler*, Case No. 09-60247-RLJ-13, 2015 WL 4726794, at *4 (Bankr. N.D. Tex. June 9, 2015), *aff'd sub nom. Kessler v. Wilson (In re*

Under the Bankruptcy Code, there are three ways to conclude a Chapter 13 case: "discharge pursuant to § 1328, conversion to a Chapter 7 case pursuant to § 1307(c) or dismissal of a Chapter 13 case 'for cause' under § 1307(c)." *Leavitt v. Soto* (*In re Leavitt*), 171 F.3d 1219, 1223 (9th Cir. 1999).[19] With the first path precluded by the Debtor's failure to complete a major component of her Plan—her failure to make her Direct Payments to the Lender in accordance with the requirements of her confirmed Plan—only two options remain. A review of the Bankruptcy Code strongly suggests that there is no sufficient statutory authorization to simply close the case as proposed by the Trustee, when, as here, a discharge has not been entered because the Debtor failed to comply with the provisions of and complete all of the payments required under the confirmed Plan.

Because the Debtor has failed to successfully complete her Plan according to its terms, the

---

*Kessler*), Civil Action No. 6:15-CV-040-C (N.D. Tex. Nov. 19, 2015); *see also In re Ramos*, 540 B.R. 580, 589, 596 (Bankr. N.D. Tex. 2015). The *Ramos* court additionally ordered that its ruling was "without prejudice to the Debtors' right to convert and pursue a discharge in Chapter 7 (if eligible) within ten days of entry of this order, otherwise the court will dismiss the Bankruptcy Case without prejudice." *In re Ramos*, 540 B.R. at 596.

Additionally, on at least two occasions, the Bankruptcy Court for the District of Colorado, following the reasoning of *In re Heinzle* and the numerous other cases concluding that direct payments promised to a creditor pursuant to a confirmed plan constitute "payments under the plan," vacated a Chapter 13 discharge as improvidently granted based upon its review of the respective case dockets, which revealed the debtors failed to maintain their postpetition mortgage payments. *In re Doggett*, Case No. 09-35061-HRT, 2015 WL 4099806, at *1, *3 (Bankr. D. Colo. July 6, 2015); *In re Gonzales*, 532 B.R. 828, 831, 834 (Bankr. D. Colo. 2015). The Colorado Bankruptcy Court did not address the ultimate disposition of the case following either of these decisions.

[19] One decision has concluded that the addition of § 1328(f) to the Bankruptcy Code authorizes a fourth option: the closure of a case upon completion of all plan payments without a discharge where a discharge may not be issued on account of 11 U.S.C. § 1328(f). *See In re Okosisi*, 451 B.R. 90, 99 (Bankr. D. Nev. 2011). Section 1328(f) prohibits receipt of a Chapter 13 discharge where a discharge was received in a prior case. That section has no applicability in the instant matter. Further, where all of the required payments under the plan were not made, the condition of case closure, established by 11 U.S.C. § 350, that this case has been "fully administered," is unmet. *See* 11 U.S.C. § 350 (2015).

remedies available to the Trustee under the Bankruptcy Code are either conversion or dismissal of the case pursuant to 11 U.S.C. § 1307. The Motion requests only conversion or closure without discharge, with the latter remedy unavailable under the Bankruptcy Code. Dismissal or conversion could have materially different ramifications for the Debtor, her estate, and her creditors. In order to provide due and proper notice to the Debtor and all creditors and parties in interest of the outcome sought by the Trustee, the Court finds that the Trustee should file an amended motion containing an appropriate prayer for conversion or dismissal of the Debtor's case pursuant to 11 U.S.C. § 1307 ("Amended Motion") within fourteen (14) days of the date of the entry of the order that shall be entered simultaneously with this Memorandum Opinion. The Court further finds that the Debtor should thereafter have fourteen (14) days to file an answer to the Amended Motion. The Court will set the matter for hearing following the filing of the Amended Motion and the Debtor's response thereto.

A separate order will be entered pursuant to Federal Rule of Bankruptcy Procedure 9021 consistent with the findings in this Memorandum Opinion.

The Clerk shall transmit a copy of this Memorandum Opinion to the Debtor, Marlene Denise Evans; Jessica R. Casey, counsel for the Debtor; R. Clinton Stackhouse, Jr., Chapter 13 Trustee; Kelly M. Barnhart, counsel for the Chapter 13 Trustee; and Kenneth N. Whitehurst, III, Assistant United States Trustee.

Entered this 5th day of January, 2016, at Newport News in the Eastern District of Virginia.

Date: Jan 5, 2016

_____
STEPHEN C. ST. JOHN
Chief United States Bankruptcy Judge

Entered on Docket: Jan 5, 2016

33