1                    IN THE UNITED STATES BANKRUPTCY COURT
2                    EASTERN DISTRICT OF VIRGINIA (NEWPORT NEWS)

                                       )    Case No. 10-51101-SCS
3     In re                            )    Newport News, Virginia
                                       )
4     MARLENE DENISE EVANS,            )
                                       )    December 11, 2015
5                        Debtor.       )    10:17 AM
                                       )
6     _____ )

7                          TRANSCRIPT OF HEARING
      64 - TRUSTEE'S MOTION TO CLOSE CASE WITHOUT ENTRY OF DISCHARGE
8              BEFORE THE HONORABLE STEPHEN C. ST. JOHN,
                    UNITED STATES BANKRUPTCY JUDGE
9

10    APPEARANCES:

11    For the Debtor:            JESSICA R. CASEY, ESQ.
                                 CASEY LEGAL, P.C.
12                               11828 Canon Boulevard
                                 Suite A
13                               Newport News, VA 23606

14

15    For the Trustee:          KELLY MEGAN BARNHART, ESQ.
                                 ROUSSOS, GLANZER & BARNHART, P.L.C.
16                               580 E. Main Street
                                 Suite 300
17                               Norfolk, VA 23510

18

19
      Transcription Services:              eScribers
20                                         700 West 192nd Street
                                           Suite #607
21                                         New York, NY 10040
                                           (973) 406-2250
22

23    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

24    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

25

Colloquy                                                                   2

1          THE CLERK:  Item number 63, Marlene Evans.

2          THE COURT:  Good Morning.

3          MS. CASEY:  Good morning, Your Honor.

4          THE COURT:  Are you Ms. Evans, ma'am?

5          THE DEBTOR:  Yes, Your Honor.

6          THE COURT:  Ms. Evans, let me ask you a couple of

7    questions before we proceed today.

8          Ms. Casey has stipulated and represented to the Court

9    that unfortunately you are behind on your mortgage, is that

10   correct?

11         THE DEBTOR:  That's the correct, Your Honor.

12         THE COURT:  And how much are you behind,

13   approximately, if you know?

14         THE DEBTOR:  I don't know the total, Your Honor.

15         THE COURT:  Do you know how many payments you're

16   behind?

17         THE DEBTOR:  I believe it's at least like ten.

18         THE COURT:  When was the last time you made a

19   payment?

20         THE DEBTOR:  I'm not even sure, Your Honor.

21         THE COURT:  Have you had any contact with your

22   mortgage company about trying to work out any type of loan

23   modification or anything that would not put your house

24   immediately in jeopardy?

25         THE DEBTOR:  Yes, Your Honor.

Colloquy                                                                3

1            THE COURT:  Can you tell me about that?

2            THE DEBTOR:  I'm trying to get a loan modification.

3            THE COURT:  All right.  And what has occurred on that

4    so far?

5            THE DEBTOR:  Well, basically, I have to complete the

6    package and then submit it.  And then a decision will be made

7    at that time.

8            MS. CASEY:  Your Honor, if I could briefly interrupt

9    for a second.

10           They're processing my authorization to speak to her,

11   from what I understand.  And I would like to let the Court

12   know that Ms. Evans received a loan modification, the order

13   for that was entered on August 5th, 2014.

14           THE COURT:  Right, thank you for reminding me.  I do

15   recall that from the record, yes, ma'am.

16           MS. CASEY:  Yes, Your Honor.  It's been my experience

17   that they don't allow loan modifications that soon after a

18   prior loan modification, but like Ms. Evans just stated, she

19   has contacted them about doing so again.  And they won't give

20   her a decision until she's submitted the entire packet again.

21           THE COURT:  All right.  And, Ms. Evans, is it your

22   intention you are going to try and submit whatever your lender

23   needs to consider?

24           THE DEBTOR:  Yes, sir.

25           THE COURT:  And when do you think you'll do that?

Colloquy                                                                            4

1          THE DEBTOR:  As soon as I receive the packet.

2          THE COURT:  All right.  So you haven't received the

3  package from the lender yet, is that correct?

4          THE DEBTOR:  That's correct.

5          THE COURT:  All right.  Ms. Casey also represented to

6  the Court at the original hearing that you were behind on your

7  homeowner association dues, is that correct?

8          THE DEBTOR:  That's correct.

9          THE COURT:  And can you tell me how much you're

10  behind on that?

11          THE DEBTOR:  I believe, I'm not certain, that it's

12  like maybe 14 or 15,000, because it's like fees that I'm

13  charged for, for not -- noncompliance fees with repairs.

14          THE COURT:  All right.  And have you had any contact

15  with the homeowner's association to try and work out that

16  debt?

17          THE DEBTOR:  I believe I went to court for that, I'm

18  not certain.

19          THE COURT:  Ms. Casey, did you want to assist?

20          MS. CASEY:  Yes, Your Honor.  Throughout this

21  bankruptcy she's been having noncompliance fees and stuff like

22  that come up.  And it's because I think that she doesn't --

23  can't afford to do the repairs, and so they keep coming up.

24  And it's my understanding -- it's been my understanding that

25  the homeowner's association just keeps filing stuff in state

Colloquy                                                                    5

1   court and does not allow her any kind of concessions as to get

2   that caught up.  That would be the need, as I stated last time

3   we were here, to file the new bankruptcy to get her current on

4   that so that she can make the repairs, because with the amount

5   that they're wanting from her now on the fines and stuff, she

6   cannot make the repairs.  Once the -- when she files another

7   bankruptcy and is allowed to pay the arrearages on her

8   homeowner's association along with the fines, through the

9   bankruptcy she will be able to make the repairs.

10          THE COURT:  All right.  Ms. Evans, can you tell me

11  why -- what has occurred to you financially that has caused

12  you to get behind on your mortgage and the homeowner's

13  association dues?

14          THE DEBTOR:  I had a reduction in my income.  And

15  then I also had displaced relatives to move in with me.  And

16  it, you know, put a financial burden on me.

17          THE COURT:  All right.  All right.  Is it your

18  intention to instruct your counsel to proceed on the motion

19  that's before the Court today?

20          THE DEBTOR:  Yes, Your Honor.

21          THE COURT:  All right.  Ms. Evans, thank you for

22  appearing today.

23          THE DEBTOR:  Thank you.

24          THE COURT:  Ms. Barnhart, your argument?  Or let me

25  ask you both, obviously I've received your stipulation at the

Colloquy                                                                6

1   original hearing which I continued to this date.  I accepted

2   the factual stipulation that you all have agreed to, and I

3   presume continue to.

4           Ms. Casey asked that I note that the -- a certain

5   certificate had been filed as a matter of record, which I have

6   agreed to do.

7           Is there any other additional evidence or stipulation

8   that you wish the Court to consider before I hear argument

9   today?

10          MS. BARNHART:  Not by the trustee, Your Honor.  I

11  believe our stipulation remains in place.

12          THE COURT:  Ms. Casey, is there anything further?

13          MS. CASEY:  No, Your Honor.  I think the docket

14  report would take care of any other evidence as in -- you know

15  she's filed both credit counseling certificates and things of

16  that nature.  And the 1328 certification takes care of any

17  other issues as well.

18          THE COURT:  All right.  Your argument, Ms. Barnhart.

19          MS. BARNHART:  Thank you, Your Honor.

20          The debtor as well as the creditors and the trustee

21  are bound to the terms of the confirmed plan, pursuant not

22  only to 1327, but also by case law, as identified for instance

23  in the case of In re Rodnok, which is 197 B.R. 232, which

24  presided by the Bankruptcy Court of the Eastern District of

25  Virginia in 1996.

1    As indicated, the trustee issued the notice of final

2  care payment, which he's required to do under 3002.1(f) on

3  August 26th, 2015.  That notice indicated that the trustee had

4  made all of the payments he was required to make under the

5  terms of the confirmed plan.

6    Citi Financial, who is the lender in this case, filed

7  its statement in response to the notice of final cure on

8  September 16th, indicating that the debtor was in default with

9  respect to post-petition payments as of September 16th in the

10  amount of 6,344 dollars.

11    The trustee inquired as to counsel if she believed

12  this statement was accurate, and she did indicate that she did

13  agree with that statement.

14    1328(a) indicates that a discharge may be granted

15  upon the completion of all payments under the plan.  In every

16  case that has considered the issue of what is all payments has

17  interpreted it to include any payments proposed under the

18  plan, including direct payments to secured creditors.  The

19  cases that would include saying that would be In re Russell,

20  which is 458 B.R. 731, decided by the Bankruptcy Court for the

21  Eastern District of Virginia in 2010; as well as In re

22  Kessler, decided in 2015, that citation would be 2015 Bankr.

23  LEXIS 1889, decided out of the Northern District of Texas on

24  June 9th, 2015; as well as In re Heinzle, citation is 511 B.R.

25  69, out of the Western District of Texas in 2014; and a

Case 10-51101-SCS   Doc 81   Filed 01/12/16   Entered 01/12/16 11:57:46   Desc Main
Document      Page 8 of 27

1    Nebraska case, decided in 1989, In re Harris.  Those are

2    simply some of the cases that have said that.

3          The trustee did an expansive research to try to find

4    any case that said otherwise, that all payments would not

5    include every payment described in the plan, and he was unable

6    to do so.

7          The plain language of the statute require debtors to

8    comply with the terms of their plans as it relates to

9    payments.  And if that is not complied with, no discharge

10   should be granted.

11         Were the trustee to recommend discharge under the

12   circumstances he would have to make -- he would have to ignore

13   the statements made by the lender in this case.  At the time

14   the trustee is simply trying to comply with the process for

15   obtaining a discharge, and if he were to recommend a discharge

16   in this case and not asking the Court for direction, he may be

17   accused of dereliction of his duties, as was the case in In re

18   Gonzalez out of Colorado.

19         Since this last hearing occurred, another case has

20   been decided, In re Ramos, the citation is 2015 Bankr. LEXIS

21   3890, and that was out of the Northern District of Texas

22   Bankruptcy Court on November 13th, 2015.

23         In every one of these cases that has considered this

24   issues, the court has instructed that the debtor simply is not

25   entitled to a discharge under 1328, because not all payments

1  have been made as proposed under the plan.

2           And in every one of those cases it seems that the

3  debtor made the argument that what was required under 1328 was

4  simply that all payments due to the trustee had to be made in

5  order to qualify for a discharge.

6           Each court that has considered that argument has

7  rejected it, simply finding that the plain language is all

8  payments under the plan must be paid whether by the trustee or

9  by the debtor directly.

10          As the bankruptcy court from the Eastern District of

11 Virginia through Judge Mitchell indicated, "Simply because

12 payments are not being made through the trustee does not mean

13 they are not being made under the plan.  If the plan defines

14 the payment terms, and in the cases it clearly does, then the

15 payments are being made under the plan regardless of whether

16 the debtor pays the creditor directly or pays the trustee."

17          In the bankruptcy case In re Arredondo, out of the

18 Northern District of Texas Lubbock Division, decided on 2004,

19 which was before this rule went into place, it also found that

20 payments to a secured creditor as proposed under a plan were

21 considered plan payments.  And if the debtor did not make

22 them, the debtor was not entitled to a discharge.

23          Your Honor, the case that perhaps is the most similar

24 is the case of In re Formaneck, which citation is 534 B.R. 29,

25 and is out of the Bankruptcy Court for the District of

1  Colorado, and decided on July 13th, 2015.  In that case the

2  debtors proposed to cure pre-petition arrears through payments

3  to the trustee, which were owed to Wells Fargo, and to

4  continue to make their mortgage payments to be paid directly

5  to Wells Fargo as provided for in their plan.

6          While the debtors completed all their required

7  monthly payments to the standing trustee, and the trustee

8  disbursed funds to Wells Fargo, the debtors failed to make

9  their regular post-petition payments directly to Wells Fargo

10 over the course of the case.  The parties stipulated that the

11 debtor's plan did provide for payments to the trustee as well

12 as payments to Wells Fargo.  They further stipulated that

13 while the debtor made the payments to the trustee, the debtor

14 had not made the post-petition payments in full to Wells

15 Fargo.  Therefore, the debtors had agreed that there was a

16 default under the terms of their confirmed plan.

17          Notwithstanding that, the debtor wanted to make the

18 argument that such default would not be considered material as

19 to the trustee or unsecured creditors, and in the absence of

20 any harm to the trustee's administration of the plan, only

21 Wells Fargo could be the party to file a motion to dismiss.

22 The court denied such an argument saying that "Rather than

23 execute the terms of the confirmed plan, the debtors chose to

24 withhold over thirty months of post-petition earnings promised

25 to Wells Fargo as direct mortgage payments, and failed to

1    amend or adjust their payments to unsecured creditors to make

2    up for the thirty-month windfall.  On the one hand, the

3    debtors want a fixed distribution to unsecured creditors and

4    unbridled discretion to utilize post-petition income as they

5    see fit, and on the other hand, they want their Chapter 13

6    discharge.  To allow the debtors to now have their cake and

7    eat it too would simply be unfair."

8            Under the facts of that case, the trustee sought

9    dismissal and the court found that the argument that Wells

10   Fargo would be the only appropriate party to do so, the court

11   said "That is a distinction without a difference.  They failed

12   to disclose or even address how they had been spending their

13   income, and at the end of the plan, they expected to get their

14   discharge."

15           The court found that, based on their failure to make

16   the payments to Wells Fargo, that was a material default under

17   the terms of the plan, so that not only would they be not

18   entitled to a discharge under 1328, but that the court had no

19   choice but to dismiss the case pursuant to 1307, because they

20   had failed to comply with the terms of their own confirmed

21   plan as proposed by them, and not sought to be modified by

22   them.

23           In the case of In re Gonzalez, before the Bankruptcy

24   Court for the District of Colorado, citation 532 B.R. 828,

25   which was decided on June 9th of this year, the facts were a

1    bit different in that the trustee, himself, had recommended a

2    discharge, or herself recommended a discharge, notwithstanding

3    the fact that a mortgage company had filed a statement under

4    3002.1 indicating that the debtors had not made all of their

5    plan payments to them as required under the confirmed plan.

6            The debtors then filed another case.  And the court

7    in the previous Chapter 13 case admonished the trustee for

8    having recommended a discharge after the creditor had filed

9    such a response.

10           In reviewing what the court would do, the court went

11   through the various cases and the court said, "In short, the

12   Court finds no authority, nor have the parties cited the Court

13   to any, to suggest a cogent argument that payments to be made

14   directly to a creditor, pursuant to the terms of confirmed

15   plan, are not payments under the plan as that term is used in

16   11 U.S.C. Section 1328(a).  A standard discharge under 1328(a)

17   requires completion of all payments under the plan, and that

18   language plainly embraces payments that a plan provides will

19   be made directly by the debtor to a creditor."

20           As a result, the court vacated the discharge entered

21   in that case, and, again, admonished the trustee for having

22   recommended a discharge after that notice was filed on the

23   docket.

24           Your Honor, it is the trustee's position in this

25   case, although unfortunate, the debtor simply was not making

1   her mortgage payments.  She had a change in circumstances,

2   perhaps, and maybe the appropriate resolution would have been

3   to file a modified plan.  But at this point we can't go

4   backwards.  We're left with the situation that the debtor,

5   although her confirmed plan required her to make payments to

6   her mortgage company, she did not do so, and our docket

7   reflects that she has not made all of the payments required to

8   be made under her proposed plan.

9        Accordingly, it is the trustee's position that the

10  debtor is not entitled to a discharge under 1328(a).

11        THE COURT:  All right, thank you.  Ms. Casey, your

12  argument?

13        MS. CASEY:  Yes, sir, Your Honor.

14        Ms. Evans has done everything required of her to

15  obtain her discharge.  She has made all of her payments under

16  the plan, she's completed her two credit counseling, and she

17  filed her certification that she is in compliance with Section

18  1328.

19        There are only very few cases on this subject.  The

20  cases that Ms. Barnhart cited are the only ones that I could

21  find.  They're all out of Colorado or Texas, which are not

22  binding on this Court.  Other than that, there is no other

23  case law on this subject.  That's due to the fact that over a

24  decade, over more than a decade, all the courts in this

25  country have treated the mortgage payments as not payments

Colloquy                                                          14

1    under the plan and issued discharges.  They've all continued

2    to treat them as such, and currently treat them as such as far

3    as I'm aware.

4         There are only -- only the courts in Colorado and

5    Texas have brought down any opinions, or denied anybody's

6    discharge over this matter.  Only these very few judges agree

7    with the trustee's position on this matter.

8         The only case that Ms. Barnhart cited that is binding

9    on this Court is In re Russell.  That case does not say what

10   the trustee is purporting that it says.  That case was a case

11   in which a debtor was trying to cram down a nonprincipaled

12   residence mortgage.  The debtor tried to reduce the interest

13   rate but keep their mortgage over 360 months.  And the court

14   said that they could not do that.  And the court -- and with

15   where Ms. Barnhart quoted, the court states that the payments

16   -- not all payments made through the trustee are necessarily -

17   - not all payments made under the plan are necessarily

18   payments made under the trustee, because this case was looking

19   at payments made on a cramdown -- they were trying to cram

20   down the interest rate on a 360-month payment.  And so that

21   would have been through the trustee or through the plan, under

22   the plan because of that.  And because of that it's subject to

23   the five-year limitation.  So they would either have to pay

24   the mortgage out in five years, or they have to stick with the

25   contract terms, not the terms of the plan.  And, therefore,

1  that is not -- the case of In re Russell is not I would say

2  binding on this case, because it's completely different.  And

3  this case was not trying to cram down her mortgage; she was

4  just paying the arrearage through the plan.  And, therefore,

5  Russell does not apply here.

6          All of the other cases that Ms. Barnhart cited is my

7  opinion that they took the case of In the Matter of Foster,

8  which is a case from 1982, almost all of them relate back to

9  that case.  It's from 1982, and the judge did state that

10 payments made in the manner associated here would be payments

11 under the plan for purposes of language that he did not like

12 in the plan.  This was a confirmation case.  That none of --

13 that In re Foster did not address whether the debtor would not

14 be able to receive a discharge because of this, it just

15 addressed confirming a plan.

16         On the plain language of all of the statutes in

17 question, you look at the term under the plan, that is the

18 crux of this, the term under the plan and the meaning of the

19 term under the plan.  And if you look at all the Code sections

20 contained in the Bankruptcy Code, it's -- the term under the

21 plan is contained in several sections.  And there are several

22 sections where you cannot interpret under the plan as meaning

23 payments to anything other than the trustee.  And those are

24 laid out in my brief, and I can go through them again if you

25 would like.  But they're -- I think I lay them out pretty

Colloquy                                                     16

1   plainly in my brief.

2          In addition, Rule 3002.1, which is what has made --

3   has brought us here today, the filing of the notice under Rule

4   3002.1(f) says that notice -- that notice cannot be filed

5   until all payments under the plan can be made.  So if the

6   trustee has filed that notice, they have agreed that all

7   payments under the plan have been made.  The trustee cannot go

8   both ways, they can't say both -- we filed this notice, all

9   the plan payments have been made under the plan, and also she

10  has not made all the plan payments under the plan, so she

11  can't get her discharge.  It has to go one way, it can't go

12  both ways.  The term "under the plan" has to be determined to

13  not include these payments for them to have rightfully filed

14  that 3002.1(f) notice.

15         If the Court determines today that the payments under

16  the plan -- the post-petition mortgage payments are under the

17  plan, and seeks to define that term in that manner, it

18  basically renders Rule 3002.1(f) useless, because then the

19  trustee will need the creditor's response to that notice

20  before they ever file that notice.

21         In addressing some of the things that the trustee

22  stated and some of the case law, Ms. Evans has proven that

23  there was no windfall to her -- it would have been no windfall

24  to her creditors.  She spoke to the Court earlier on Your

25  Honor's questioning that the reason that the payments were not

1  made is because she started supporting additional dependents.

2  And Ms. Barnhart also mentioned not being able to go

3  backwards.  And the implications of this, a ruling in their

4  favor in this case would be that any debtor towards the end of

5  their plan who decided that they wanted to surrender the

6  house, but there was no change in circumstances such as a

7  change of income or things of that nature, would not be able

8  to get a discharge because they would conceivably stop making

9  payments, but we would not be able to amend the plan because

10 there would be no change in circumstances to warrant the plan.

11        For instance, within the last three years, I've had a

12 couple of cases that have done that.  They've decided they

13 wanted to surrender their home towards the end of the plan.

14 They were in about month fifty-five, both of them, and there

15 was in change circumstances to amend the plan.  They received

16 their discharge even though they  had not made plan payments.

17 And the case got discharged, and their case closed in the

18 normal course.  They would not have been able to receive their

19 discharge even though they willingly did not make the payments

20 on the mortgage.

21        The other implications policywise are also laid out

22 pretty fairly in my brief.  Because of all of this, because

23 there's no case law on the subject that does not relate back

24 to In re Foster, which has been taken out of context, and

25 there is no binding case law on this Court, we are asking the

1   Court to enter Ms. Evans' discharge, and let her case close in

2   the normal course, so that we can proceed on -- with -- well,

3   she can proceed on with her life.

4            THE COURT:  All right, thank you.  Your rebuttal

5   argument?

6            MS. BARNHART:  Thank you, Your Honor.

7            One such case that exists outside of both Colorado

8   and Texas, which is an older case, is out of the Northern

9   District of Indiana Hammond Division, its citation is 1996

10  Bankr. LEXIS 825.  It's in the matter of Eric and Joy

11  MacIntosh (ph.).

12           THE COURT:  Could you give me that again please?

13           MS. BARNHART:  Yes, Your Honor.  It's a 1996 Bankr.

14  LEXIS 825, decided on June 14th, 1996.  And in this case, Your

15  Honor --

16           THE COURT:  What is the name of it?

17           MS. BARNHART:  It's In re MacIntosh.

18           And in this case, Your Honor, Judge Grant had to

19  consider whether the debtors would be able to get their

20  discharge, although they had not made all of the payments

21  required under the plan specifically, they had not yet

22  satisfied the obligation to priority claims, which otherwise

23  would have had to been paid in full.

24           And, specifically, the court says, "The right to full

25  compliance discharge is specifically conditioned on completion

1   by the debtor of all payments under the plan," citing 1328(a).

2          The court then says, "This does not occur until all

3   the payments required by the plan have been made and the

4   creditors provided for by the plan have received what the plan

5   says they will."  And there's a number of citations following

6   that, Your Honor.

7          The court then says, "Consequently, even though

8   debtors have made their payments required of them, they have

9   not yet satisfied their obligations under the plan, because

10  priority claims have not been fully paid.  This failure to pay

11  the percentage called for in the plan precludes qualification

12  for a discharge."

13         The court then says, "Section 1328(a) mandates the

14  granting of a full compliance discharge after completion by

15  the debtors of all payments under the plan.  The debtors have

16  not met this discharge, and so cannot claim any right to the

17  discharge."

18         So that's one example, Your Honor, prior to

19  3002.1(f), where a court, considering whether a debtor could

20  get a discharge, although not making all the payments provided

21  for under a plan, said that a debtor could not receive such a

22  discharge.

23         And, Your Honor, I would note as the Western District

24  of Texas, San Antonio Division noted in the Heinzle,

25  H-E-I-N-Z-L-E, citation 511 B.R. 69, May 29th, 2014, the court

1    noted, "The debtors have the ability to modify their plan

2    particularly where there has been a plan default, such as a

3    failure to maintain their post-petition mortgage payments.

4    Debtors know that they are not making their mortgage payments,

5    the trustee does not.  It would have been impossible for the

6    trustee to know whether the debtors are making their mortgage

7    payments unless somebody notifies the trustee."

8          Your Honor, in addition, in the case of Formaneck,

9    also out of the District of Colorado, again the court simply

10   found that it's on the debtor to take the appropriate measures

11   when they're not making their payments.

12         And all of the cases that I've cited to, both in my

13   motion, the brief portion of it, and the cases I've cited

14   today, all find that 1328(a) simply requires the debtor to

15   comply with the terms of their own confirmed plan.

16         We are at the end of the case.  However, it's not the

17   trustee's responsibility to make the mortgage payments.  And

18   it's only the debtor who knows whether she's making those

19   payments or not until we get to the end of the case.  And I do

20   not believe that the trustee is in a position to ignore a

21   notification that the debtor has not complied with the terms

22   of her plan.  I do not believe there is a distinction between

23   in the plan and out of the plan with respect to mortgage

24   payments.  And I think the cases that have considered this

25   issue have said those are considered plan payments, whether

1  the trustee is the conduit or not.  When a debtor proposes to

2  make those payments direct, what the debtor is saying is that

3  although the trustee could be the one making it, it's the

4  debtor who as elected to do that.  They may elect to do that

5  to avoid the on top of commission that the trustee would have

6  to be paid if he were the conduit of the mortgage payments.

7          For whatever reason, the debtor chooses to make those

8  payments, she's chosen not to surrender the property.  We are

9  here because those payments were not made.  And,

10  unfortunately, the Code, I believe, calls for all payments to

11  be made in order to obtain a discharge.

12          THE COURT:  All right, thank you.

13          Thank you for your arguments.  The Court will take

14  the matter under advisement.  It's my intention at this time

15  to issue a written opinion, which I will cause to be issued as

16  promptly as possible.  Thank you.

17          MS. CASEY:  Thank you, Your Honor.

18          THE CLERK:  Everyone please rise.  This honorable

19  court is adjourned.

20      (Whereupon these proceedings were concluded at 10:46 AM)

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4          I, Esther Accardi, the court approved transcriber, do

5    hereby certify the foregoing is a true and correct transcript

6    from the official electronic sound recording of the

7    proceedings in the above-entitled matter.

8

9

10

11                                         January 12, 2016

12   _____        _____

13   ESTHER ACCARDI                         DATE

14   AAERT Certified Electronic Transcriber CET**D 485

15

16

17

18

19

20

21

22

23

24

25

**1**

**10:46 (1)**
21:20
**11 (1)**
12:16
**13 (2)**
11:5;12:7
**1307 (1)**
11:19
**1327 (1)**
6:22
**1328 (5)**
6:16;8:25;9:3;11:18;
13:18
**1328a (7)**
7:14;12:16,16;13:10;
19:1,13;20:14
**13th (2)**
8:22;10:1
**14 (1)**
4:12
**14th (1)**
18:14
**15,000 (1)**
4:12
**16th (2)**
7:8,9
**1889 (1)**
7:23
**197 (1)**
6:23
**1982 (2)**
15:8,9
**1989 (1)**
8:1
**1996 (4)**
6:25;18:9,13,14

**2**

**2004 (1)**
9:18
**2010 (1)**
7:21
**2014 (3)**
3:13;7:25;19:25
**2015 (7)**
7:3,22,22,24;8:20,22;
10:1
**232 (1)**
6:23
**26th (1)**
7:3
**29 (1)**
9:24
**29th (1)**
19:25

**3**

**3002.1 (2)**

**12:4;16:2**
**3002.1f (5)**
7:2;16:4,14,18;19:19
**360 (1)**
14:13
**360-month (1)**
14:20
**3890 (1)**
8:21

**4**

**458 (1)**
7:20

**5**

**511 (2)**
7:24;19:25
**532 (1)**
11:24
**534 (1)**
9:24
**5th (1)**
3:13

**6**

**6,344 (1)**
7:10
**63 (1)**
2:1
**69 (2)**
7:25;19:25

**7**

**731 (1)**
7:20

**8**

**825 (2)**
18:10,14
**828 (1)**
11:24

**9**

**9th (2)**
7:24;11:25

**A**

**ability (1)**
20:1
**able (7)**
5:9;15:14;17:2,7,9,18;
18:19
**absence (1)**
10:19
**accepted (1)**
6:1

**Accordingly (1)**
13:9
**accurate (1)**
7:12
**accused (1)**
8:17
**addition (2)**
16:2;20:8
**additional (2)**
6:7;17:1
**address (2)**
11:12;15:13
**addressed (1)**
15:15
**addressing (1)**
16:21
**adjourned (1)**
21:19
**adjust (1)**
11:1
**administration (1)**
10:20
**admonished (2)**
12:7,21
**advisement (1)**
21:14
**afford (1)**
4:23
**again (6)**
3:19,20;12:21;15:24;
18:12;20:9
**agree (2)**
7:13;14:6
**agreed (4)**
6:2,6;10:15;16:6
**allow (3)**
3:17;5:1;11:6
**allowed (1)**
5:7
**almost (1)**
15:8
**along (1)**
5:8
**although (5)**
12:25;13:5;18:20;
19:20;21:3
**amend (3)**
11:1;17:9,15
**amount (2)**
5:4;7:10
**Antonio (1)**
19:24
**appearing (1)**
5:22
**apply (1)**
15:5
**appropriate (3)**
11:10;13:2;20:10
**approximately (1)**
2:13
**argument (11)**
5:24;6:8,18;9:3,6;
10:18,22;11:9;12:13;

**13:12;18:5**
**arguments (1)**
21:13
**arrearage (1)**
15:4
**arrearages (1)**
5:7
**arrears (1)**
10:2
**Arredondo (1)**
9:17
**assist (1)**
4:19
**associated (1)**
15:10
**association (5)**
4:7,15,25;5:8,13
**August (2)**
3:13;7:3
**authority (1)**
12:12
**authorization (1)**
3:10
**avoid (1)**
21:5
**aware (1)**
14:3

**B**

**back (2)**
15:8;17:23
**backwards (2)**
13:4;17:3
**Bankr (4)**
7:22;8:20;18:10,13
**bankruptcy (12)**
4:21;5:3,7,9;6:24;
7:20;8:22;9:10,17,25;
11:23;15:20
**Barnhart (12)**
5:24;6:10,18,19;
13:20;14:8,15;15:6;
17:2;18:6,13,17
**based (1)**
11:15
**basically (2)**
3:5;16:18
**behind (6)**
2:9,12,16;4:6,10;5:12
**binding (4)**
13:22;14:8;15:2;17:25
**bit (1)**
12:1
**both (8)**
5:25;6:15;16:8,8,12;
17:14;18:7;20:12
**bound (1)**
6:21
**BR (6)**
6:23;7:20,24;9:24;
11:24;19:25
**brief (4)**

**15:24;16:1;17:22;**
**20:13**
**briefly (1)**
3:8
**brought (2)**
14:5;16:3
**burden (1)**
5:16

**C**

**cake (1)**
11:6
**called (1)**
19:11
**calls (1)**
21:10
**Can (8)**
3:1;4:9;5:4,10;15:24;
16:5;18:2,3
**care (3)**
6:14,16;7:2
**case (49)**
6:22,23;7:6,16;8:1,4,
13,16,17,19;9:17,23,24;
10:1,10;11:8,19,23;12:6,
7,21,25;13:23;14:8,9,10,
10,18;15:1,2,3,7,8,9,12;
16:22;17:4,17,17,23,25;
18:1,7,8,14,18;20:8,16,
19
**cases (13)**
7:19;8:2,23;9:2,14;
12:11;13:19,20;15:6;
17:12;20:12,13,24
**CASEY (13)**
2:3,8;3:8,16;4:5,19,
20;6:4,12,13;13:11,13;
21:17
**caught (1)**
5:2
**cause (1)**
21:15
**caused (1)**
5:11
**certain (3)**
4:11,18;6:4
**certificate (1)**
6:5
**certificates (1)**
6:15
**certification (2)**
6:16;13:17
**change (5)**
13:1;17:6,7,10,15
**Chapter (2)**
11:5;12:7
**charged (1)**
4:13
**choice (1)**
11:19
**chooses (1)**
21:7

**chose (1)**
10:23
**chosen (1)**
21:8
**circumstances (5)**
8:12;13:1;17:6,10,15
**citation (7)**
7:22,24;8:20;9:24;
11:24;18:9;19:25
**citations (1)**
19:5
**cited (6)**
12:12;13:20;14:8;
15:6;20:12,13
**Citi (1)**
7:6
**citing (1)**
19:1
**claim (1)**
19:16
**claims (2)**
18:22;19:10
**clearly (1)**
9:14
**CLERK (2)**
2:1;21:18
**close (1)**
18:1
**closed (1)**
17:17
**Code (3)**
15:19,20;21:10
**cogent (1)**
12:13
**Colorado (7)**
8:18;10:1;11:24;
13:21;14:4;18:7;20:9
**coming (1)**
4:23
**commission (1)**
21:5
**company (3)**
2:22;12:3;13:6
**complete (1)**
3:5
**completed (2)**
10:6;13:16
**completely (1)**
15:2
**completion (4)**
7:15;12:17;18:25;
19:14
**compliance (3)**
13:17;18:25;19:14
**complied (2)**
8:9;20:21
**comply (4)**
8:8,14;11:20;20:15
**conceivably (1)**
17:8
**concessions (1)**
5:1
**concluded (1)**

21:20
**conditioned (1)**
18:25
**conduit (2)**
21:1,6
**confirmation (1)**
15:12
**confirmed (9)**
6:21;7:5;10:16,23;
11:20;12:5,14;13:5;
20:15
**confirming (1)**
15:15
**Consequently (1)**
19:7
**consider (3)**
3:23;6:8;18:19
**considered (7)**
7:16;8:23;9:6,21;
10:18;20:24,25
**considering (1)**
19:19
**contact (2)**
2:21;4:14
**contacted (1)**
3:19
**contained (2)**
15:20,21
**context (1)**
17:24
**continue (2)**
6:3;10:4
**continued (2)**
6:1;14:1
**contract (1)**
14:25
**counsel (2)**
5:18;7:11
**counseling (2)**
6:15;13:16
**country (1)**
13:25
**couple (2)**
2:6;17:12
**course (3)**
10:10;17:18;18:2
**COURT (74)**
2:2,4,6,8,12,15,18,21;
3:1,3,11,14,21,25;4:2,5,
6,9,14,17,19;5:1,10,17,
19,21,24;6:8,12,18,24;
7:20;8:16,22,24;9:6,10,
25;10:22;11:9,10,15,18,
24;12:6,10,10,11,12,12,
20;13:11,22;14:9,13,14,
15;16:15,24;17:25;18:1,
4,12,16,24;19:2,7,13,19,
25;20:9;21:12,13,19
**courts (2)**
13:24;14:4
**cram (3)**
14:11,19;15:3
**cramdown (1)**

14:19
**credit (2)**
6:15;13:16
**creditor (5)**
9:16,20;12:8,14,19
**creditors (7)**
6:20;7:18;10:19;11:1,
3;16:24;19:4
**creditor's (1)**
16:19
**crux (1)**
15:18
**cure (2)**
7:7;10:2
**current (1)**
5:3
**currently (1)**
14:2

**D**

**date (1)**
6:1
**debt (1)**
4:16
**DEBTOR (47)**
2:5,11,14,17,20,25;
3:2,5,24;4:1,4,8,11,17;
5:14,20,23;6:20;7:8;
8:24;9:3,9,16,21,22;
10:13,13,17;12:19,25;
13:4,10;14:11,12;15:13;
17:4;19:1,19,21;20:10,
14,18,21;21:1,2,4,7
**debtors (17)**
8:7;10:2,6,8,15,23;
11:3,6;12:4,6;18:19;
19:8,15,15;20:1,4,6
**debtor's (1)**
10:11
**decade (2)**
13:24,24
**decided (11)**
7:20,22,23;8:1,20;
9:18;10:1;11:25;17:5,
12;18:14
**decision (2)**
3:6,20
**default (5)**
7:8;10:16,18;11:16;
20:2
**define (1)**
16:17
**defines (1)**
9:13
**denied (2)**
10:22;14:5
**dependents (1)**
17:1
**dereliction (1)**
8:17
**described (1)**
8:5

**determined (1)**
16:12
**determines (1)**
16:15
**difference (1)**
11:11
**different (2)**
12:1;15:2
**direct (3)**
7:18;10:25;21:2
**direction (1)**
8:16
**directly (6)**
9:9,16;10:4,9;12:14,
19
**disbursed (1)**
10:8
**discharge (35)**
7:14;8:9,11,15,15,25;
9:5,22;11:6,14,18;12:2,
2,8,16,20,22;13:10,15;
14:6;15:14;16:11;17:8,
16,19;18:1,20,25;19:12,
14,16,17,20,22;21:11
**discharged (1)**
17:17
**discharges (1)**
14:1
**disclose (1)**
11:12
**discretion (1)**
11:4
**dismiss (2)**
10:21;11:19
**dismissal (1)**
11:9
**displaced (1)**
5:15
**distinction (2)**
11:11;20:22
**distribution (1)**
11:3
**District (12)**
6:24;7:21,23,25;8:21;
9:10,18,25;11:24;18:9;
19:23;20:9
**Division (3)**
9:18;18:9;19:24
**docket (3)**
6:13;12:23;13:6
**dollars (1)**
7:10
**done (2)**
13:14;17:12
**down (4)**
14:5,11,20;15:3
**due (2)**
9:4;13:23
**dues (2)**
4:7;5:13
**duties (1)**
8:17

**E**

**earlier (1)**
16:24
**earnings (1)**
10:24
**Eastern (3)**
6:24;7:21;9:10
**eat (1)**
11:7
**either (1)**
14:23
**elect (1)**
21:4
**elected (1)**
21:4
**embraces (1)**
12:18
**end (5)**
11:13;17:4,13;20:16,
19
**enter (1)**
18:1
**entered (2)**
3:13;12:20
**entire (1)**
3:20
**entitled (4)**
8:25;9:22;11:18;13:10
**Eric (1)**
18:10
**Evans (10)**
2:1,4,6;3:12,18,21;
5:10,23;13:14;16:22
**Evans' (1)**
18:1
**even (5)**
2:20;11:12;17:16,19;
19:7
**Everyone (1)**
21:18
**evidence (2)**
6:7,14
**example (1)**
19:18
**execute (1)**
10:23
**exists (1)**
18:7
**expansive (1)**
8:3
**expected (1)**
11:13
**experience (1)**
3:16

**F**

**fact (2)**
12:3;13:23
**facts (2)**
11:8,25

MARLENE DENISE EVANS
Case No. 10-51101-SCS

December 11, 2015

**factual (1)**
6:2
**failed (4)**
10:8,25;11:11,20
**failure (3)**
11:15;19:10;20:3
**fairly (1)**
17:22
**far (2)**
3:4;14:2
**Fargo (10)**
10:3,5,8,9,12,15,21,
25;11:10,16
**favor (1)**
17:4
**fees (3)**
4:12,13,21
**few (2)**
13:19;14:6
**fifty-five (1)**
17:14
**file (4)**
5:3;10:21;13:3;16:20
**filed (12)**
6:5,15;7:6;12:3,6,8,
22;13:17;16:4,6,8,13
**files (1)**
5:6
**filing (2)**
4:25;16:3
**final (2)**
7:1,7
**financial (2)**
5:16;7:6
**financially (1)**
5:11
**find (3)**
8:3;13:21;20:14
**finding (1)**
9:7
**finds (1)**
12:12
**fines (2)**
5:5,8
**fit (1)**
11:5
**five (1)**
14:24
**five-year (1)**
14:23
**fixed (1)**
11:3
**following (1)**
19:5
**Formaneck (2)**
9:24;20:8
**Foster (3)**
15:7,13;17:24
**found (4)**
9:19;11:9,15;20:10
**full (4)**
10:14;18:23,24;19:14
**fully (1)**

19:10
**funds (1)**
10:8
**further (2)**
6:12;10:12

**G**

**Gonzalez (2)**
8:18;11:23
**Good (2)**
2:2,3
**Grant (1)**
18:18
**granted (2)**
7:14;8:10
**granting (1)**
19:14

**H**

**Hammond (1)**
18:9
**hand (2)**
11:2,5
**harm (1)**
10:20
**Harris (1)**
8:1
**hear (1)**
6:8
**hearing (3)**
4:6;6:1;8:19
**Heinzle (2)**
7:24;19:24
**H-E-I-N-Z-L-E (1)**
19:25
**herself (1)**
12:2
**himself (1)**
12:1
**home (1)**
17:13
**homeowner (1)**
4:7
**homeowner's (4)**
4:15,25;5:8,12
**Honor (25)**
2:3,5,11,14,20,25;3:8,
16;4:20;5:20;6:10,13,
19;9:23;12:24;13:13;
18:6,13,15,18;19:6,18,
23;20:8;21:17
**honorable (1)**
21:18
**Honor's (1)**
16:25
**house (2)**
2:23;17:6

**I**

**identified (1)**

6:22
**ignore (2)**
8:12;20:20
**immediately (1)**
2:24
**implications (2)**
17:3,21
**impossible (1)**
20:5
**include (4)**
7:17,19;8:5;16:13
**including (1)**
7:18
**income (4)**
5:14;11:4,13;17:7
**Indiana (1)**
18:9
**indicate (1)**
7:12
**indicated (3)**
7:1,3;9:11
**indicates (1)**
7:14
**indicating (2)**
7:8;12:4
**inquired (1)**
7:11
**instance (2)**
6:22;17:11
**instruct (1)**
5:18
**instructed (1)**
8:24
**intention (3)**
3:22;5:18;21:14
**interest (2)**
14:12,20
**interpret (1)**
15:22
**interpreted (1)**
7:17
**interrupt (1)**
3:8
**into (1)**
9:19
**issue (3)**
7:16;20:25;21:15
**issued (3)**
7:1;14:1;21:15
**issues (2)**
6:17;8:24
**Item (1)**
2:1

**J**

**jeopardy (1)**
2:24
**Joy (1)**
18:10
**Judge (3)**
9:11;15:9;18:18
**judges (1)**

14:6
**July (1)**
10:1
**June (3)**
7:24;11:25;18:14

**K**

**keep (2)**
4:23;14:13
**keeps (1)**
4:25
**Kessler (1)**
7:22
**kind (1)**
5:1
**knows (1)**
20:18

**L**

**laid (2)**
15:24;17:21
**language (5)**
8:7;9:7;12:18;15:11,
16
**last (4)**
2:18;5:2;8:19;17:11
**law (5)**
6:22;13:23;16:22;
17:23,25
**lay (1)**
15:25
**least (1)**
2:17
**left (1)**
13:4
**lender (4)**
3:22;4:3;7:6;8:13
**LEXIS (4)**
7:23;8:20;18:10,14
**life (1)**
18:3
**limitation (1)**
14:23
**loan (5)**
2:22;3:2,12,17,18
**look (2)**
15:17,19
**looking (1)**
14:18
**Lubbock (1)**
9:18

**M**

**ma'am (2)**
2:4;3:15
**MacIntosh (2)**
18:11,17
**maintain (1)**
20:3
**making (8)**

12:25;17:8;19:20;
20:4,6,11,18;21:3
**mandates (1)**
19:13
**manner (2)**
15:10;16:17
**many (1)**
2:15
**Marlene (1)**
2:1
**material (2)**
10:18;11:16
**matter (6)**
6:5;14:6,7;15:7;18:10;
21:14
**may (4)**
7:14;8:16;19:25;21:4
**maybe (2)**
4:12;13:2
**mean (1)**
9:12
**meaning (2)**
15:18,22
**measures (1)**
20:10
**mentioned (1)**
17:2
**met (1)**
19:16
**Mitchell (1)**
9:11
**modification (4)**
2:23;3:2,12,18
**modifications (1)**
3:17
**modified (2)**
11:21;13:3
**modify (1)**
20:1
**month (1)**
17:14
**monthly (1)**
10:7
**months (2)**
10:24;14:13
**more (1)**
13:24
**Morning (2)**
2:2,3
**mortgage (21)**
2:9,22;5:12;10:4,25;
12:3;13:1,6,25;14:12,13,
24;15:3;16:16;17:20;
20:3,4,6,17,23;21:6
**most (1)**
9:23
**motion (3)**
5:18;10:21;20:13
**move (1)**
5:15
**much (2)**
2:12;4:9
**must (1)**

9:8

## N

name (1)
18:16
nature (2)
6:16;17:7
Nebraska (1)
8:1
necessarily (2)
14:16,17
need (2)
5:2;16:19
needs (1)
3:23
new (1)
5:3
noncompliance (2)
4:13,21
none (1)
15:12
nonprincipaled (1)
14:11
nor (1)
12:12
normal (2)
17:18;18:2
Northern (4)
7:23;8:21;9:18;18:8
note (2)
6:4;19:23
noted (2)
19:24;20:1
notice (12)
7:1,3,7;12:22;16:3,4,4,
6,8,14,19,20
notification (1)
20:21
notifies (1)
20:7
Notwithstanding (2)
10:17;12:2
November (2)
8:22
number (2)
2:1;19:5

## O

obligation (1)
18:22
obligations (1)
19:9
obtain (2)
13:15;21:11
obtaining (1)
8:15
obviously (1)
5:25
occur (1)
19:2
occurred (3)

3:3;5:11;8:19
older (1)
18:8
Once (1)
5:6
one (7)
8:23;9:2;11:2;16:11;
18:7;19:18;21:3
ones (1)
13:20
only (11)
6:22;10:20;11:10,17;
13:19,20;14:4,4,6,8;
20:18
opinion (2)
15:7;21:15
opinions (1)
14:5
order (3)
3:12;9:5;21:11
original (2)
4:6;6:1
otherwise (2)
8:4;18:22
out (17)
2:22;4:15;7:23,25;
8:18,21;9:17,25;13:21;
14:24;15:24,25;17:21,
24;18:8;20:9,23
outside (1)
18:7
over (6)
10:10,24;13:23,24;
14:6,13
owed (1)
10:3
own (2)
11:20;20:15

## P

package (2)
3:6;4:3
packet (2)
3:20;4:1
paid (5)
9:8;10:4;18:23;19:10;
21:6
particularly (1)
20:2
parties (2)
10:10;12:12
party (2)
10:21;11:10
pay (3)
5:7;14:23;19:10
paying (1)
15:4
payment (5)
2:19;7:2;8:5;9:14;
14:20
payments (76)
2:15;7:4,9,15,16,17,

18;8:4,9,25;9:4,8,12,15,
20,21;10:2,4,7,9,11,12,
13,14,25;11:1,16;12:5,
13,15,17,18;13:1,5,7,15,
25,25;14:15,16,17,18,
19;15:10,10,23;16:5,7,9,
10,13,15,16,25;17:9,16,
19;18:20;19:1,3,8,15,20;
20:3,4,7,11,17,19,24,25;
21:2,6,8,9,10
pays (2)
9:16,16
percentage (1)
19:11
perhaps (2)
9:23;13:2
ph (1)
18:11
place (2)
6:11;9:19
plain (3)
8:7;9:7;15:16
plainly (2)
12:18;16:1
plan (75)
6:21;7:5,15,18;8:5;
9:1,8,13,13,15,20,21;
10:5,11,16,20,23;11:13,
17,21;12:5,5,15,15,17,
18;13:3,5,8,16;14:1,17,
21,22,25;15:4,11,12,15,
17,18,19,21,22;16:5,7,9,
9,10,10,12,16,17;17:5,9,
10,13,15,16;18:21;19:1,
3,4,4,9,11,15,21;20:1,2,
15,22,23,23,25
plans (1)
8:8
please (2)
18:12;21:18
point (1)
13:3
policywise (1)
17:21
portion (1)
20:13
position (4)
12:24;13:9;14:7;20:20
possible (1)
21:16
post-petition (7)
7:9;10:9,14,24;11:4;
16:16;20:3
precludes (1)
19:11
pre-petition (1)
10:2
presided (1)
6:24
presume (1)
6:3
pretty (2)
15:25;17:22

previous (1)
12:7
prior (2)
3:18;19:18
priority (2)
18:22;19:10
proceed (4)
2:7;5:18;18:2,3
proceedings (1)
21:20
process (1)
8:14
processing (1)
3:10
promised (1)
10:24
promptly (1)
21:16
property (1)
21:8
proposed (6)
7:17;9:1,20;10:2;
11:21;13:8
proposes (1)
21:1
proven (1)
16:22
provide (1)
10:11
provided (3)
10:5;19:4,20
provides (1)
12:18
purporting (1)
14:10
purposes (1)
15:11
pursuant (3)
6:21;11:19;12:14
put (2)
2:23;5:16

## Q

qualification (1)
19:11
qualify (1)
9:5
quoted (1)
14:15

## R

Ramos (1)
8:20
rate (2)
14:13,20
Rather (1)
10:22
re (15)
6:23;7:19,21,24;8:1,
17,20;9:17,24;11:23;
14:9;15:1,13;17:24;

18:17
reason (2)
16:25;21:7
rebuttal (1)
18:4
recall (1)
3:15
receive (4)
4:1;15:14;17:18;19:21
received (5)
3:12;4:2;5:25;17:15;
19:4
recommend (2)
8:11,15
recommended (4)
12:1,2,8,22
record (3)
3:15;6:5
reduce (1)
14:12
reduction (1)
5:14
reflects (1)
13:7
regardless (1)
9:15
regular (1)
10:9
rejected (1)
9:7
relate (2)
15:8;17:23
relates (1)
8:8
relatives (1)
5:15
remains (1)
6:11
reminding (1)
3:14
renders (1)
16:18
repairs (5)
4:13,23;5:4,6,9
report (1)
6:14
represented (2)
2:8;4:5
require (1)
8:7
required (11)
7:2,4;9:3;10:6;12:5;
13:5,7,14;18:21;19:3,8
requires (2)
12:17;20:14
research (1)
8:3
residence (1)
14:12
resolution (1)
13:2
respect (2)
7:9;20:23

MARLENE DENISE EVANS
Case No. 10-51101-SCS

December 11, 2015

**response (3)**
7:7;12:9;16:19
**responsibility (1)**
20:17
**result (1)**
12:20
**reviewing (1)**
12:10
**right (16)**
3:3,14,21;4:2,5,14;
5:10,17,17,21;6:18;
13:11;18:4,24;19:16;
21:12
**rightfully (1)**
16:13
**rise (1)**
21:18
**Rodnok (1)**
6:23
**rule (4)**
9:19;16:2,3,18
**ruling (1)**
17:3
**Russell (4)**
7:19;14:9;15:1,5

**S**

**San (1)**
19:24
**satisfied (2)**
18:22;19:9
**saying (3)**
7:19;10:22;21:2
**second (1)**
3:9
**Section (3)**
12:16;13:17;19:13
**sections (3)**
15:19,21,22
**secured (2)**
7:18;9:20
**seeks (1)**
16:17
**seems (1)**
9:2
**September (2)**
7:8,9
**several (2)**
15:21,21
**short (1)**
12:11
**similar (1)**
9:23
**simply (10)**
8:2,14,24;9:4,7,11;
11:7;12:25;20:9,14
**situation (1)**
13:4
**somebody (1)**
20:7
**soon (2)**
3:17;4:1

**sought (2)**
11:8,21
**speak (1)**
3:10
**specifically (3)**
18:21,24,25
**spending (1)**
11:12
**spoke (1)**
16:24
**standard (1)**
12:16
**standing (1)**
10:7
**started (1)**
17:1
**state (2)**
4:25;15:9
**stated (3)**
3:18;5:2;16:22
**statement (4)**
7:7,12,13;12:3
**statements (1)**
8:13
**states (1)**
14:15
**statute (1)**
8:7
**statutes (1)**
15:16
**stick (1)**
14:24
**stipulated (3)**
2:8;10:10,12
**stipulation (4)**
5:25;6:2,7,11
**stop (1)**
17:8
**stuff (3)**
4:21,25;5:5
**subject (4)**
13:19,23;14:22;17:23
**submit (2)**
3:6,22
**submitted (1)**
3:20
**suggest (1)**
12:13
**supporting (1)**
17:1
**sure (1)**
2:20
**surrender (3)**
17:5,13;21:8

**T**

**ten (1)**
2:17
**term (7)**
12:15;15:17,18,19,20;
16:12,17
**terms (13)**

6:21;7:5;8:8;9:14;
10:16,23;11:17,20;
12:14;14:25,25;20:15,21
**Texas (8)**
7:23,25;8:21;9:18;
13:21;14:5;18:8;19:24
**Therefore (3)**
10:15;14:25;15:4
**thirty (1)**
10:24
**thirty-month (1)**
11:2
**though (3)**
17:16,19;19:7
**three (1)**
17:11
**Throughout (1)**
4:20
**today (7)**
2:7;5:19,22;6:9;16:3,
15;20:14
**took (1)**
15:7
**top (1)**
21:5
**total (1)**
2:14
**towards (2)**
17:4,13
**treat (2)**
14:2,2
**treated (1)**
13:25
**tried (1)**
14:12
**trustee (38)**
6:10,20;7:1,3,11;8:3,
11,14;9:4,8,12,16;10:3,
7,7,11,13,19;11:8;12:1,
7,21;14:10,16,18,21;
15:23;16:6,7,19,21;20:5,
6,7,20;21:1,3,5
**trustee's (5)**
10:20;12:24;13:9;
14:7;20:17
**try (3)**
3:22;4:15;8:3
**trying (6)**
2:22;3:2;8:14;14:11,
19;15:3
**two (1)**
13:16
**type (1)**
2:22

**U**

**unable (1)**
8:5
**unbridled (1)**
11:4
**under (48)**
7:2,4,15,17;8:11,25;

9:1,3,8,13,15,20;10:16;
11:8,16,18;12:3,5,15,16,
17;13:8,10,15;14:1,17,
18,21;15:11,17,18,19,20,
22;16:3,5,7,9,10,12,15,
16;18:21;19:1,9,15,21;
21:14
**unfair (1)**
11:7
**unfortunate (1)**
12:25
**unfortunately (2)**
2:9;21:10
**unless (1)**
20:7
**unsecured (3)**
10:19;11:1,3
**up (4)**
4:22,23;5:2;11:2
**upon (1)**
7:15
**USC (1)**
12:16
**used (1)**
12:15
**useless (1)**
16:18
**utilize (1)**
11:4

**V**

**vacated (1)**
12:20
**various (1)**
12:11
**Virginia (3)**
6:25;7:21;9:11

**W**

**warrant (1)**
17:10
**way (1)**
16:11
**ways (2)**
16:8,12
**Wells (10)**
10:3,5,8,9,12,14,21,
25;11:9,16
**Western (2)**
7:25;19:23
**Whereupon (1)**
21:20
**willingly (1)**
17:19
**windfall (3)**
11:2;16:23,23
**wish (1)**
6:8
**withhold (1)**
10:24
**within (1)**

17:11
**without (1)**
11:11
**work (2)**
2:22;4:15
**written (1)**
21:15

**Y**

**year (1)**
11:25
**years (2)**
14:24;17:11