**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

RE:    Marlene Denise Evans            Debtors Case No.: 10-51101
       Debtor.

**ANSWER TO TRUSTEE'S MOTION TO COVERT OR DISMISS AND MEMORANDUM BRIEF IN SUPPORT THEREOF**

Marlene Evans (the "Debtor"), the debtor herein, through counsel, as and for her Answer to the Motion to Close Case Without Entry of Discharge filed by R. Clinton Stackhouse, Jr., Chapter 13 Trustee (the "Trustee") and Memorandum Brief in Support (the "Response"), states as follows:

1. Debtor admits the allegations contained in paragraphs 1 through 29.

2. Paragraph 30 is a statement of the Court's ruling that need neither admittance nor denial, but to the extent it is necessary, Debtor denies any allegations contained therein and demands strict proof thereof. Debtor further states that cases conclude by closing without a discharge on a daily basis.

3. Debtor denies the allegations contained in paragraphs 31 through 40 and demands strict proof thereof. Debtor further states that, with regards to paragraph 35, if the lender felt prejudiced by the debtor's actions, the lender has its own remedies (most notably, a Motion for Relief). In addition, if the lender's opinion and the prejudice against said lender is to be a major part of the ruling on this matter, said lender should be joined therein and required to appear at any hearing.

4. The Debtor further states as follows in her Brief in Support of her Answer.

# DEBTORS BRIEF IN SUPPORT OF ANSWER TO TRUSTEE'S MOTION TO CONVERT OR DISMISS

## Question Presented

Whether, under title 11 of the United States Bankruptcy Code, a Debtor should receive a discharge once all payments under the plan have been completed.

## Facts

The Debtor incorporates all facts admitted in her answer herein.

## Argument

11 U.S.C. Section 1328(a) states as follow:

> **(a)** Subject to subsection (d), as soon as practicable after completion by the debtor of all payments **under the plan**, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of al debts **provided for by the plan** or disallowed under section 502 of this title, except any debt **(1)** provided for under section 1322(b)(5); **(2)** of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a); **(3)** for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or **(4)** for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that cause personal injury to an individual or the death of an individual. (emphasis added)

According to this section, this and all debtors must complete payments under the plan and any domestic support obligation payments in order to receive a discharge. The Trustee's argument and this Court's previous ruling seek to define the term "under the plan." The Trustee, in his Motion, contends that the payments on the debtor's mortgage are

considered payments under the plan simply because the plan mentions them in section 5A. The debtor disagrees for the following reasons.

The debtor's payments to her mortgage company cannot be considered payments under the plan because the United States Supreme Court has made a distinction which refutes any such argument. In *Rake v. Wade*, 508 U.S. 464 (1993), the Supreme Court stated that a plan that lists a claim under 11 U.S.C. Section 1322(b)(5) essentially splits the claim into "payments of principal and interest on the underlying debts [that are] simply 'maintained' according to the terms of the mortgage documents...[and] arrearages as a distinct claim to be paid off within the life of the plan pursuant to repayment schedules established by the plan." The Court in *Rake* does not speak specifically to the underlying issue in this case, namely the meaning of the term "under the plan" but makes the clear distinction stated above, which would include only the arrearage payments as "under the plan." This Court, in its previous opinion, cited *Rake* in order to establish that the direct payments on a mortgage are provided for by the plan. However, the term "provided for by the plan" is not at issue here. The Code makes a clear distinction in 11 U.S.C. Section 1328 between the terms "under the plan" and "provided for by the plan." In Section 1328(a), the same paragraph uses both terms. Thus, there is clear intent that the two terms be interpreted as having two different meanings. Otherwise, the paragraph in question would have been drafted using the same term in both places. The direct payments on the debtor's mortgage are payments provided for by the plan and subject to discharge, but then excepted from that discharge. The direct payments are not payments under the plan.

The debtor's payments to her mortgage company cannot be considered payments under the plan when considering the plain language of 11 U.S.C. Section 1322(b)(5), which states

> **(a)** Subject to subsections (a) and (c) of this section, the plan may… **(5)** notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which **the last payment is due after the date on which the final payment under the plan is due**; (emphasis added)

A maintenance payment has a last payment that is due after the date on which the final payment under the plan is due. Thus, when looking at the plain language of the statute, a maintenance payment cannot be a payment under the plan. More significantly, the code uses the term "under the plan" in numerous places and when each one is considered, it becomes clear that the term is not defined the same in each code section and we must rely on the context to determine the meaning. For example, 11 U.S.C. Section 727(a)(9) states that a debtor may not receive a discharge in a chapter 7 filing if they had a prior chapter 13 filing within the previous 6 years unless "payments **under the plan** in such case totaled at lease (A) 100 percent of the allowed unsecured claims in such case; or (B)(i) 70 percent of such claims; and (ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort" (emphasis added). It is clear in reading the context of Section 727(a)(9) that the term "under the plan" does not include the mortgage payments made directly by the debtor. Similarly, in accordance with 11 U.S.C. Section 1329(a)(4) the plan may be modified to "reduce amounts to be paid under the plan by an actual amount expended by the debtor to purchase health insurance…" It is clear in this section that the meaning of the term "under the plan" is the payments to the trustee. If

the payments to a mortgage company are under the plan, this section of the code would be stating that the plan can be amended to reduce the mortgage payments in order to purchase health insurance.  This is a nonsensical reading of this section and such a reduction would garner a Motion for Relief by the lender and would not be allowed by this Court as it would be a violation of 11 U.S.C. Section 1322(b)(2) as a modification of the mortgage contract.  In addition to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure also contain differing meanings to the term "under the plan".  For example, Fed. R. Bankr. P. 3002.1(f) (the "Rule") reads, "Within 30 days after the debtor completes all payments **under the plan**, the trustee shall file and serve…a notice stating that the debtor has paid in full the amount required to cure any default on the claim" (emphasis added).  The trustee bases his Motion on the CitiFinancial's response to the notice he filed under this rule.  It is clear that the term "under the plan" in this rule is the payments to the trustee.  Otherwise, it was improper for the Trustee to file and serve the notice on August 26, 2015 and would render the rule useless as the Trustee would need the response to his Notice before the Notice was ever filed.  One can only conclude from the information contained above, and the fact that "under the plan" is not a defined term, that each instance of the term must be defined in the context of the particular section in which it is contained.  The only conclusion to be drawn when looking at the context of Section 1322(b)(5) is that "under the plan" does not include maintenance payments.  This is due to the fact that Section 1322(b)(5) makes a distinction between maintenance payments and payments under the plan and that 11 U.S.C. Section 1322(b)(2) clearly takes principle residence mortgage payments out of the plan as the plan is not able to modify the terms of said mortgage.

The debtor's payments to her mortgage company cannot be considered payments under the plan when considering the plain language of 11 U.S.C. Section 1322(d), which states in relevant part "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. Section 1322(d)(1)(C) and (d)(2). Therefore, if the payments to debtor's mortgage company, which total 360 months, are to be considered "under the plan," said payments are in violation of this section. In fact, no plan which proposes payments under section 5A would be confirmable unless the payments contemplated concluded within 5 years of the date of filing of the petition due to the plan not complying "with the provisions of this chapter and with other applicable provisions of this title" 11 U.S.C. Section 1325(a)(1). This court has further stated, a payment is a payment under the plan it is "subject to the five-year limit on such payments…" *In re Russell*, 458 B.R. 731, 739 (Bankr. E.D. Va. 2010). In *Russell*, the Court stated clearly that payments do not have to be made through the Trustee to be under the plan but then continues and states "[i]f the plan defines the payment terms…then the payments are being made 'under' the plan." *Id.* The Trustee, in taking this language out of context, states that this is proof positive that the payments on the mortgage are payments under the plan. However, when one reads the entirety of the Court's discussion in *Russell*, it is clear that the plan must define the payment terms of a loan in order for said payments to be under the plan and subject to the five-year limitation enumerated in 11 U.S.C. Section 1322(d)(1). The form plan used in this jurisdiction, in section 5A, does not define the payment terms of the loan, but simply states that the loan will be paid in accordance with the original agreement made between the parties (see language as discussed below). Because the original contract between the parties, not the plan, defines the payment

terms, the payments on debtor's mortgage cannot be under the plan and, if they were under the plan, would have to be subject to the five year limitation. *See e.g. In re Russell, supra.*

The trustee, in his Motion, sites several cases that are persuasive authority for this Court. All of said cases rely on *Foster, Matter of*, 670 F.2d 478 (C.A.5 (Tex.), 1982). In *Foster* the Court was concerned with confirming a plan that the Trustee objected to based on a debtor paying a long term mortgage outside the plan while paying certain arrearages through the plan. The Court determined that the plan must provide for the long term mortgage payments if it is to provide for the curing of pre-petition arrearages. While the Court in *Foster* did determine that the payments were payments provided for by the plan, the Court did not determine that the debtor should be denied a discharge for failing to make said payments nor did the court discuss 11 U.S.C. Section 1328(a) with regard to the payments in question. In fact, the Court only stated that the maintenance payments to the mortgage company were "'under the plan' within the meaning of §1302 and are, therefore, subject to the trustee's fee." *Id*., at 491. With the inclusion of the court of the phrase "within the meaning of §1302," it is clear that the Court in Foster meant only for its interpretation of the term under the plan to extend to Section 1302. Therefore, when looking at the cases that rely on *Foster*, namely *In re Heinzle*, 511 B.R. 69 (Bankr. W.D. Tex. 2014) and *In re Kessler*, 2015 Bankr. LEXIS 1889 (Bankr. N.D. Tex. June 9, 2015), the Courts incorrectly expanded the Foster opinion and incorrectly determined that the definition of the term "under the plan," as defined in said opinion, extended to other Sections of the Code.

The debtor's payments to her mortgage company cannot be considered payments under the plan when the language of the plan suggests otherwise. The plain language of the debtor's confirmed Chapter 13 Plan states

> **5. Mortgage Loans Secured by real Property Constituting the Debtor(s)' Primary Residence…Curing of any existing default under 11 U.S.C. Section 3122(b)(5). A. Debtor(s) to make regular contract payments; arrears, if any, to be paid by Trustee.** The creditors listed below will be paid by the debtor(s) _**pursuant to the contract without modification**_, except that arrearages, if any, will be paid by the Trustee either pro rata with other secured claims or on a fixed monthly basis as indicated below… (emphasis added)

The plan then lists the Mortgage debt held by CitiFinancial, Inc., that the collateral was the debtor's residence located at 38 Corwin Circle, Hampton, VA, that her contract payment was, at the time of filing, $665.00 and that the Estimated Arrearage was $400.00. The plan does not alter the terms of the original contract or define the terms of the debt (i.e. the interest rate, escrow payments, the number of payments, the remedies in the event of a default, etc.), but simply restates what the contract payment was at the time of filing. The plan actually furthers this argument and specifically states that the maintenance payments will be paid pursuant to the contract. Thus, when, in accordance with the debtor's contract, escrow payments or interest rates increase, the payment will increase and the lender will not be bound by the amount listed in the plan. It is clear from the language in the plan that the long term payments are not defined by the plan and therefore are not under the plan.

Lastly, the debt in question is not subject to debtor's discharge, which shows intent by the drafters for the maintenance payments as defined in Section 1322(b)(5) to not be payments under the plan. To conclude otherwise severely disrupts the premise

behind most chapter 13 filings and disrupts the process in general. The majority of debtors entering into a Chapter 13, rather than a Chapter 7, are doing so to cure the delinquent payments on their mortgage and maintain the regular contract payments. The effect of denying debtor's discharge for not making full payments on the mortgage contract is that there is no change to the remedies that the mortgage lender otherwise would have had, but there is a substantial change to the remedies available to all other creditors contemplated by the debtor's plan and to the debtor herself. The mortgage lender will still be able to remedy the default by the debtor by foreclosing on the property and requiring payment on any deficiency from the debtor, which is not changed whether the debtor receives a discharge or her discharge is denied. The additional secured creditors (in this case: Haynes Home Furnishings, City of Hampton and Summer Place HOA, Inc.) are given additional remedies that they would not have if the debtor had received her discharge. They would be able to refuse to release their lien, which would cause a more substantial disruption in a case involving a motor vehicle paid for under the plan, and to repossess the property in question and collect any deficiency. In addition, the unsecured creditors would be able to collect on the pre-petition debt. Most disturbing, however, is the effect on the debtor. The debtor now, having contemplated that there would be ramifications from not paying a mortgage payments by way of the debt not being discharged, would be forced to do one of three things. First, the debtor can convert her case to one under chapter 7, which would most likely cause her to lose everything given she wouldn't have the opportunity to pay secured claims in accordance with the regular contract (i.e. cars, furniture, etc.). Second, the debtor can enter into a subsequent chapter 13, which could start a cycle which has a debtor perpetually in a

bankruptcy, which is the exact opposite of what the code contemplates. Third, the debtor can deal with the creditors directly, which again most likely would cause her to lose all items subject to a security interest (again, this would be more significant to a debtor with a secured vehicle). None of the options available to the debtor are ideal and none of them afford the debtor with the fresh start that a bankruptcy filing contemplates.

In addition to all arguments stated above, the ramifications on the Bankruptcy Court, Chapter 13 trustee and Bankruptcy bar would be numerous. If this Court should rule that Chapter 13 debtors must remain current on their mortgage payments in order to obtain their discharge in contravention to the plain meaning of the plan and statutes, there would likely be a large downturn in Chapter 13 filings. This would be due to the fact that there are many unanticipated things that can happen within the 3 to 5 years a bankruptcy plan is pending that could (and do) cause debtors to become delinquent to their mortgage lender. Given this uncertainty and the risk of losing their entire discharge after working hard for 3 to 5 years to make a plan work, it could (and should) be anticipated that many will not take on the additional risk and would seek to either take advantage of other options or surrender their home and not risk the discharge. The choice to surrender property leads most debtors to a filing under Chapter 7 rather than Chapter 13. Further, to be fair and just would necessitate that the Court look at all Responses to the Notice of Final Cure Payment that were issued since the Rule was enacted and reopen and deny the discharge to each of those debtors. Similarly, it would be necessary for the Court to review all cases in which a Motion for Relief was granted where the plan listed the debt in Section 5A and deny those debtors their discharge. As can be seen, the number of debtors that would be ineligible for a discharge under Chapter 13 would be phenomenally

large.  Finally, the Court must, if it finds any debt contemplated by the plan must be paid in order to receive a discharge, also inquire as to the payments on any lease or contract the debtors had during the plan as well as any student loan payment made directly.  None of the above are review standards contemplated by 11 U.S.C. Section 1328 and are further proof that payments under the plan do not include the payments made directly on a principle residence mortgage.

## Conclusion

WHEREFORE, for the foregoing reasons, the Debtor requests that this Court deny the Trustee's Motion to Dismiss or Convert and grant the debtor her rightfully earned discharge and for such other relief as this Court deems proper and equitable.

Dated in Newport New, Virginia, this 25th day of January, 2016.

                                    Marlene Denise Evans

                                    By /s/ Jessica R. Casey
                                    Of Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2016, I mailed a true copy of the foregoing Answer to the Motion to the parties listed below.


                                              /s/ Jessica R. Casey
                                              Of Counsel

R. Clinton Stackhouse, Jr.
Chapter 13 Trustee
7021 Harbour View Blvd., Ste 101
Suffolk, VA 23435

Kelly M. Barnhart, Esq.
Counsel for Trustee
Roussos, Glanzer & Barnhart, PLC
580 E. Main Street., Ste 300
Norfolk, VA 23510

Marlene Denise Evans
38 Corwin Circle
Hampton, VA 23666

Jessica R. Casey, Bar No. 77849                                                                       Page 12 of 12
Attorney for Debtor
11828 Canon Blvd., Ste. A
Newport News, VA 23606
(757) 596-0456